Sean A. Woods (Arizona Bar #028930)
Robert T. Mills (Arizona Bar #018853)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.5169
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Stephan Shere, an individual, | No.: CV-23-02657-PHX-JJT (ESW) |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| vs. | |
| City of Phoenix, a governmental entity; Michael Sullivan, Chief of the Phoenix Police Department; Daniel Joseph Snyder, an individual; Alex Beaver, an individual; Christopher A Gitsch, an individual; Eric Elliot Summerville, an individual; Brittany Bartimoccia, an individual; Jacob A Lewis, an individual; Charles C Allen, an individual; Jennifer Lorrain Beberniss, an individual; Amanda Newsum, an individual; and, John and Jane Does I-X, | (JURY TRIAL DEMANDED)<br><br>(Assigned to the Honorable John J. Tuchi and Referred to the Honorable Eileen S. Willett for all pretrial proceedings) |
| Defendants | |

Plaintiff, by and through his attorneys, Mills + Woods Law, PLLC, for his First Amended Complaint ("FAC") against the CITY OF PHOENIX, a governmental entity; MICHAEL SULLIVAN, Chief of the Phoenix Police Department; DANIEL JOSEPH SNYDER, an individual; ALEX BEAVER, an individual; CHRISTOPHER A GITSCH, an individual; ERIC ELLIOT SUMMERVILLE, an individual; BRITTANY BARTIMOCCIA, an individual; JACOB A LEWIS, an individual; CHARLES C ALLEN, an individual; JENNIFER LORRAIN BEBERNISS, an individual; and, JOHN AND JANE

DOES I-X, (collectively "Defendants"), hereby alleges as follows:

## JURISDICTION AND VENUE

1. Pursuant to 42 U.S.C. §1983 *et seq.*, Plaintiffs bring this action for violations of the United States Constitution, including without limitation the Eighth and Fourteenth Amendments and Arizona common and statutory laws.

2. The amount in controversy exceeds the minimal jurisdictional limits of this Court.

3. To the extent applicable, and without conceding that said statute applies, Plaintiffs have served their Notice of Claim upon Defendants in compliance with A.R.S. §12-821.01, *et seq.* More than sixty (60) days have expired since Plaintiffs served their Notice of Claim and Defendants have not responded in any manner to said Notice of Claim.

4. Pursuant to Article 6, Section 14 of the Arizona Constitution, this court has original subject matter jurisdiction in this FAC because the claims relate to causes of action, the underlying acts and/or omissions for which, at all times relevant, have caused the events alleged herein to occur with primary effect in Maricopa County, Arizona.

5. Venue is proper in that the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

## PARTIES

6. At all relevant times in this FAC, Plaintiff Stephan Shere ("Stephan") was an individual residing in Maricopa County, Arizona.

7. Defendant CITY OF PHOENIX is a governmental entity that acts by and through its officials, employees, and agents, including without limitation the Phoenix Police Department, and each of the other Defendants in this action except for Defendants Humberto Gonzalez-Rios and Jane Doe Gonzalez-Rios.

8. Defendant MICHAEL SULLIVAN is the Chief of the Phoenix Police Department and is sued in his official and individual capacity. He is tasked with oversight of the Phoenix Police Department and is responsible for all policies and procedures promulgated by the Phoenix Police Department. He is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in

Maricopa County, Arizona.

9. Defendant DANIEL JOSEPH SNYDER is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

10. Defendant ALEX BEAVER is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

11. Defendant CHRISTOPHER A GITSCH is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

12. Defendant ERIC ELLIOT SUMMERVILLE is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

13. Defendant BRITTANY BARTIMOCCIA is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in her official and individual capacity in Maricopa County, Arizona.

14. Defendant JACOB A LEWIS is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

15. Defendant CHARLES C ALLEN is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

16. Defendant JENNIFER LORRAIN BEBERNISS is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in her official and individual capacity in Maricopa County, Arizona.

17. Defendants Snyder, Beaver, Gitsch, Summerville, Bartimoccia, Lewis, Allen, and Beberniss for brevity's sake will be collectively referred to as "Phoenix Defendants" unless otherwise necessary to list them individually.

18. The City of Phoenix is vicariously liable under the principle of *respondeat*

*superior* for the actions and inactions of the employees of the Phoenix Police Department (the "City") and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiff as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, Defendants were acting within the course and scope of their employment or contract with Phoenix - or entities privately contracted with Phoenix.

19. For purposes of Plaintiffs' claims arising under Federal law, including without limitation the United States Constitution and 42 U.S.C. §1983 *et seq.*, and as may be relevant to Plaintiff's state law claims, at all relevant times described herein, Defendants were acting under color of state law.

20. Each of the Defendants failed to do what is minimally required of them by the United States Constitution, and the laws of the State of Arizona, relative to the care, custody and control of Stephan Shere.

21. By failing in these obligations, Defendants were deliberately indifferent to Stephan's rights guaranteed him by the United States Constitution and the State of Arizona.

22. As a result of Defendants' deliberate indifference and as a result of intentional acts and omissions to act that fell below the proscribed standard of care – through failures to properly supervise; properly carry out their job duties; and to properly administer medical attention – Stephan suffered immense pain and suffering and injuries to his person.

## FACTUAL ALLEGATIONS

23. On October 4, 2022, Stephan Shere was attacked by the police.

24. He was then detained for two (2) days in jail until October 6, 2022, when the charges were dropped.

25. On October 4, 2022, Stephan's sister thought Stephan was suicidal and called 911 to report a welfare check.

26. Police were dispatched to Stephan's residence including Officer Badge # 10370 who took photographs.

27. Officers Gitsch and Beaver approached Stephan's door with no weapons

4

drawn to attempt to speak with Stephan.

28. Clearly, they knew that Stephan was not a threat to them.

29. Stephan told them he did not want to speak with them and shut the door.

30. Upon information and belief, this angered the Phoenix Defendants.

31. From that point, the Phoenix Defendants became antagonistic and bullyish.

32. The Phoenix Defendants had no probable cause to enter or force Stephan from his domicile.

33. The Phoenix Defendants did not have a warrant to seize Stephan or search his domicile.

34. There were no exigent circumstances requiring any type of police intervention.

35. When Stephan opened the door and exited to talk peacefully with the officers, he made no threats or threatening gestures towards the officers.

36. In fact, when he saw the officers with guns drawn, he immediately began pleading with them to NOT shoot him.

37. He took a step back behind the wall of his entryway because he saw multiple officers with guns drawn.

38. He did not go back into his apartment.

39. Stephan did not want to die and made that clear to the officers.

40. He told the officers he would talk to them willingly, but that he was afraid of being shot.

41. He was not a threat of harm to himself.

42. In sum, there was no iota of evidence or indication that Stephan was dangerous to others or himself – including the Phoenix Defendants.

43. Instead of trying to defuse the situation and ensure Shere was safe, Police officers escalated the contact to the point of physically attacking Stephan.

44. The Phoenix Defendants continued to cajole and attempt to get Stephan out of his apartment.

45. Stephan finally relented and exited the apartment – where this time he was

5

greeted with weapons drawn and ballistic shields.

46. Stephan watched as officers walked away from him with their backs turned towards him.

47. Officers were not concerned that Stephan was a danger to them or they would not have walked away from Stephan with their backs to him.

48. With no provocation, Stephan was beaten and tased by officers – sustaining physical and mental injuries that could be life-long.

49. Charges against Stephan were dropped by the prosecutor.

50. Specifically, Stephan was tased and shot by bean bags by Phoenix Defendants for no reason other than to cause him pain and suffering.

51. Stephan has been diagnosed with PTSD and was having a mental breakdown when the police came for a wellness check.

52. Instead, they tased and used bean bags on him almost immediately.

53. Stephan was not hostile in any way.

54. While Stephan was on the ground, the Phoenix Defendants mocked him with statements such as "HURTS, DOESN'T IT".

55. According to the Incident Report, both Gitsch and Beaver backed off and waited for additional Officers to arrive before beginning their constant pressure to extract Stephan from his domicile.

56. Certainly, at a minimum, minutes passed until the other Defendants arrived.

57. There was ample opportunity and time for any of the Phoenix Defendants to reflect on the situation, its current status, and to stop any further escalation.

58. When the remaining Phoenix Defendants arrived, any of them could have assessed the situation and put a stop to it.

59. None of their actions were necessary, and all of the Phoenix Defendants had a duty to recognize that.

60. Instead, none of them spoke up, and none of them stopped the aggressive, reckless behavior that occurred.

61. Regardless, the Phoenix Defendants charged Stephan with multiple

6

aggravated assault charges against the officers.

62. They split Stephan's head open, brought him to the hospital, and, then jailed him illegally for two (2) days, before he was released.

### Officer Snyder

63. The Phoenix Defendants were dispatched to perform a welfare check on Stephan.

64. Despite this, Officer Snyder approached the situation armed with his ballistic shield.

65. Officer Snyder falsely claimed that Stephan sent his dog out to the officers as an act of aggression.

66. Snyder himself wrote in his police report that Stephan's dog was not aggressive and was easily corralled by another officer.

67. Snyder claimed that Stephan was non-compliant.

68. In his report he writes "AN OPPORTUNITY CAME UP AND OFFICER'S UTILIZED LESS THAN LETHAL OPTIONS TO EFFECT AN ARREST ON STEPHAN."

69. Stephan was docile and compliant.

70. Despite Stephan being compliant, the Phoenix Defendants attacked him.

71. At that point, shotgun beanbags and police tasers were used on Stephan.

72. Stephan fell to the ground.

73. Officer Snyder then slammed his ballistic shield down on Stephan's head.

74. Snyder writes that as he was approaching Stephan, "STEPHAN'S HEAD STARTED TO RAISE BACK UP AND THE BALLISTIC SHIELD STRUCK HIS HEAD."

75. He then writes that "IT APPEARED THAT HIS HEAD STARTED TO BLEED AFTER HE WAS STRUCK."

### Officer Gitsch

76. Officer Gitsch knew that Stephan presented no threat. He and Officer Beaver were the initial knockers on Stephan's door.

77. They did not have weapons out and did not pull weapons when Stephan was speaking with them.

78. After Stephan told them to go away and shut the door, Officers – including Gitsch became, upon information and belief, angry enough to concoct a plan to get Stephan out of his apartment and taken into custody by any means necessary as discussed herein.

79. Officer Gitsch was part of the team that assaulted or stood by and did nothing to stop the assault on Stephan.

80. Gitsch acknowledges that Stephan greeted the officers and then closed his door to them.

81. The officers – including Gitsch – continued to cajole and eventually forced Stephan to exit his residence.

82. Gitsch writes that Stephan was "STUNBAGGED" and "TASED."

83. To be clear, Officer Gitsch fired his taser successfully and unnecessarily hitting Stephan and injuring him.

### Officer Beaver

84. Officer Beaver knew that Stephan presented no threat. He and Officer Gitsch were the initial knockers on Stephan's door.

85. They did not have weapons out and did not pull weapons when Stephan was speaking with them.

86. After Stephan told them to go away and shut the door, Officers – including Beaver became, upon information and belief, angry enough to concoct a plan to get Stephan out of his apartment and taken into custody by any means necessary.

87. Beaver and Gitsch turned their backs on Stephan – showing no signs of fear that Stephan was a danger to anyone.

88. Despite this, they participated in and failed to intervene in the assault on Stephan.

### Officer Summerville

89. Officer Summerville was part of the team that assaulted or stood by and did nothing to stop the assault on Stephan.

90. Stephan greeted the officers and then closed his door to them.

91. The officers continued to cajole and eventually forced Stephan to exit his residence.

92. Officer Summerville was able to see that Stephan was not a threat to anyone, yet still fired his shotgun at Stephan with no provocation.

93. To be clear, Officer Summerville fired his shotgun beanbag weapon successfully and unnecessarily hitting and injuring Stephan.

### Officers Bartimoccia, Lewis, Allen, Beberniss

94. Officers Bartimoccia, Lewis, Allen, and Beberniss (the "Onlookers") were part of the team that either assaulted or stood by and did nothing to stop the assault on Stephan.

95. During the time that the Phoenix Defendants cajoled and eventually forced Stephan to exit his residence, Stephan was "STUNBAGGED" and "TASED."

96. The Onlookers at any point could have intervened and stopped any of the Phoenix Defendants from their excessive and unnecessary actions.

97. They did not intervene.

98. The Onlookers are just as responsible for the wrongful and unconstitutional conduct as those who participated in the attacks detailed herein. "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham*, 229 F.3d at 1289 (quotations omitted) (quoting *United States v. Koon*, 34 F.3d 1416, 1447, n.25 (9th Cir. 1994)). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id*. (citation omitted).

### Additional Facts and Background

99. The Phoenix Defendants charged Stephan with seven (7) counts of aggravated assault under the pretense that Stephan sent his dog, Max, out to attack the Phoenix Defendants.

100. This did not happen.

9

101. Max is an emotional support animal and is as docile of a canine as there can be.

102. Max was at the door because of the instigation of the officers.

103. Max was there to support Stephan – as he always is.

104. In each and every report from the Phoenix Defendants, they all acknowledge that Max was friendly and docile.

105. The mere presence of an animal is not a threat.

106. Furthermore, each of the Phoenix Defendants acknowledge that Stephan was not receptive to having an interaction with the Phoenix Defendants – which is his right.

107. Stephan told the officers that he wanted nothing to do with them, and he shut his door on them.

108. The Incident Report even states "HE TOLD US NUMEROUS TIMES TO GO AWAY AND WOULD ONLY TELL US 'IT DOESN'T MATTER' WHEN ASKED IF HE WAS GOING TO HURT HIMSELF. HE WOULD ONLY OPEN THE DOOR A SMALL AMOUNT AND KEPT ONE HAND HIDDEN BEHIND THE DOOR. THERE WAS A BRINDLE COLOR PITBULL DOG BEHIND STEPHAN AS HE STOOD IN THE DOORWAY."

109. Stephan was actively preventing his dog from exiting the door.

110. Stephan even told the Phoenix Defendants to put down the Ballistic Shields and he would put down anything on his person so they could chat.

111. When Stephan looked around the corner into the hallway and saw multiple officers with their service weapons drawn on him, he was understandably fearful that he could be injured or die.

112. The Phoenix Defendants continued to announce and knock and demand Stephan exit his residence.

113. Stephan reluctantly opened the door a fateful final time and the Phoenix Defendants were successful in removing him from his residence and brutally beating him to the point he needed emergency care.

114. Once taken to a holding cell, Defendants isolated Stephan under the auspices

10

of "suicide watch" even though he told the Defendants he had no intention to harm himself. Stephan was dehumanized, stripped naked, forced to wear a smock, and was forced to use the floor of his cell if he needed to use the restroom.

## COUNT I
## EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

(*Phoenix Defendants*)

115. Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

116. 42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from the use of excessive force by law enforcement officers. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Stephan Shere's rights to freedom from unreasonable seizures.

117. The Phoenix Defendants acted willfully, knowingly, and with specific intent to deprive Stephan of his rights under the Fourth Amendment of the United States Constitution, including his right to be secure in his person and free from the use of unreasonable force and seizure.

118. The Phoenix Defendants acted unreasonably by using unnecessary potentially deadly force as described herein.

119. Stephan was not resisting arrest.

120. Stephan was unarmed.

121. Stephan did not want any interaction with the Phoenix Defendants.

122. Stephan was forced out of his apartment by the Phoenix Defendants.

123. Despite the clear evidence that Stephan was unarmed, not resisting arrest, and was trying to be helpful, Defendants Synder, Gitsch, and Summerville used objectively unreasonable force by shooting Stephan with beanbags, hitting him with ballistic shields,

and tasing him.

124. The remaining Phoenix Defendants, failed to intercede or intervene to prevent their fellow officers from using unwarranted, reckless force with wanton disregard to the preservation of life.

125. Stephan's injuries were the direct result of the Phoenix Defendants' actions and inactions.

126. Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to Stephan and a high probability that substantial harm would result.

127. In causing the painful, barbaric injuries to Stephan, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

## COUNT II

## EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 – *Monell* – CUSTOM AND PRACTICE

*(City; Sullivan)*

128. Plaintiff incorporates by reference all previous allegations as fully set forth herein.

129. As previously explained, U.S.C. § 1983 provides individuals with a cause of action to sue for violations of their constitutional rights.

130. Defendant City and Defendant Sullivan's acts or failure to act deprived Stephan of his constitutional rights.

131. As described herein, the City and the Phoenix Police Department through Defendant Sullivan and his predecessors has for years created a legacy of using excessive and unlawful force against the citizens of Phoenix, Arizona.

132. The City, the Phoenix Police Department, and Defendant Sullivan as well as his predecessors has for years acted pursuant to their customs and practices in the use of excessive force, which is an expressly adopted official policy or custom within the Phoenix

Police Department.

133. Operation Orders advise officers on the use of de-escalation techniques in situations where objectively no lethal force is warranted.

134. The City and Sullivan were aware of the Phoenix Police Department's history of Chiefs claiming that new de-escalation policies or use of force policies had been established.

135. The statistics show otherwise.

136. Instead, the customs and practices of the City, the Phoenix Police Department, and Sullivan show that the de-escalation and use of non-lethal force is not enforced through written policy but established and ratified by custom and practice.

137. Despite the Phoenix Police Department's and the City's ministrations, de-escalation techniques are upon information and belief rarely used and the wrongful use of excessive force has become the norm.

138. If de-escalation was truly a priority, Stephan would not have sustained injuries.

139. The policies and procedures in place have failed and established a police force that has consistently acted with blatant disregard to Stephan's constitutional rights and extreme indifference to the value of his life.

140. It is unquestionable that there is a systemic failure by the City, the Phoenix Police Department, and Sullivan that have allowed, supported, and established the commonplace use of excessive force violative of the rights of the citizens of Phoenix, Arizona.

141. Therefore, the established customs and practices led directly to the injuries sustained by Stephan.

142. The City and Sullivan are liable for Stephan's injuries due to its established customs, patterns, and practices.

///

///

///

# COUNT III

## DUTY AND FAILURE TO INTERVENE

*(City and Sullivan)*

143. Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

144. "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham*, 229 F.3d at 1289 (quotations omitted) (quoting *United States v. Koon*, 34 F.3d 1416, 1447, n.25 (9th Cir. 1994)). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id*. (citation omitted).

145. Law enforcement officers who have a realistic opportunity to prevent a fellow officer from violating a citizen's Constitutional rights have a duty to intervene to protect the victim from the unconstitutional retaliation, use of force or violation of due process of law.

146. As set forth herein, at no time did any of the Phoenix Defendants make any affirmative step to intervene to prevent the willful and wanton conduct of Snyder, Gitsch, and Summerville nor did they take any steps to intervene to protect Plaintiffs' Constitutional rights.

147. The City is responsible for the acts and omissions of its employees under *respondeat superior.*

148. The acts and/or omissions of Phoenix Defendants were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Plaintiffs. Plaintiffs, therefore, prays for an award of punitive and exemplary damages against these individual defendants in an amount to be determined according to proof.

149. Plaintiff suffered damages as a direct and proximate result of the illegal acts of the Phoenix Defendants.

///

///

# COUNT IV
# GROSS NEGLIGENCE
*(City and Sullivan)*

150. Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

151. The basic elements of actionable negligence are a duty owed to the plaintiff, a breach thereof and an injury proximately caused by the breach. *Ballesteros v. State*, 161 Ariz. 625, 627, 780 P.2d 458, 460 (App. 1989).

152. "A duty is a matter of 'the relation between individuals which imposes upon one a legal obligation for the benefit of another.'" *Id.* (internal citations omitted). A duty is breached when the defendant fails to conform to the standard of care reasonable under the circumstances. *Ballesteros*, 161 Ariz. at 627.

153. At all relevant times, Snyder, Gitsch, and Summerville had a duty to exercise ordinary care for the safety of Stephan Shere.

154. This includes taking certain actions and refraining from other actions such that the safety from harm to Stephan was preserved.

155. They breached that duty systematically and repeatedly, including their acts and omissions set forth above, resulting in the injuries to Stephan.

156. Despite knowing their duties, Snyder's, Gitsch's, and Summerville's actions were willful and wanton and directly caused the injuries to Stephan.

157. Their conduct was willful and in flagrant disregard to the known risks to Stephan by their actions.

158. Defendant Snyder breached the standard of care by using excessive force objectively unreasonable under the totality of the circumstances.

159. Defendant Gitsch breached the standard of care by using excessive force objectively unreasonable under the totality of the circumstances.

160. Defendant Summerville breached the standard of care by using excessive force objectively unreasonable under the totality of the circumstances.

161. The remaining Onlookers breached the same standard of care by willfully

15

failing to intercede or intervene to prevent their fellow officers from using unwarranted, reckless force with wanton disregard to the preservation of life.

162. Defendant City of Phoenix is vicariously liable under *respondeat superior* for the actions of any employee, agent, or servant of the City of Phoenix, including that of the other named Defendants in this case.

163. The Phoenix Defendants, while acting as agents and employees for the Phoenix Police Department, owed a duty to Stephan to perform their responsibilities as officers of the law without the use of excessive force.

164. The Phoenix Defendants, while acting as agents and employees for Phoenix Police Department, owed a duty to Stephan to act objectively reasonably under the circumstances.

165. As a direct and proximate result of Defendants' breach, Stephan Shere sustained severe and permanent injuries, suffered extreme pain and suffering, continues to suffer from severe PTSD, and has extreme difficulty in maintaining or creating meaningful relationships.

166. Defendants' acts and omissions set forth above, also demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to Stephan and a high probability that substantial harm would result.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(Phoenix Defendants, City [vicarious liability])*

167. Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

168. To sue for intentional infliction of emotional distress, a claimant must show: (1) defendant's conduct was extreme and outrageous; (2) defendant either intended or recklessly disregarded the certainty that the claimant would suffer emotional distress; and (3) the claimant suffered emotional distress. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 553, 905 P.2d 559, 562 (Ct. App. 1995).

16

169. The Defendants engaged in extreme and outrageous conduct by beating, shooting beanbags, and firing tasers against Stephan without proper justification.

170. All the Phoenix Defendants had a duty to intervene.

171. None of the Phoenix Defendants reported anything other than Stephan not wanting a confrontation.

172. Through their conduct, the Defendants either intended or completely disregarded Stephan's dignity and constitutional rights and knew their conduct would lead Stephan to suffer emotional distress.

173. Thus, the Defendants are liable for intentional infliction of emotional distress.

## COUNT VI
## BATTERY

*(Phoenix Defendants except for Bartimoccia, Lewis, Allen, and Beberniss)*

174. Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

175. The Phoenix Defendants intentionally beat, shot, and tazed Stephane causing harmful or offensive contact with Stephan.

176. As a direct and proximate result of the Phoenix Defendants' harmful or offensive contact, Stephan suffered severe injuries.

177. These Defendants' acts constitute a battery upon Stephan in the above-described bodily contact was intentional, unauthorized, or grossly offensive in nature.

178. The acts and omissions of these Defendants were intentional, negligent, reckless, and unwarranted, and without any just cause or provocation.

179. As a direct and proximate result of these Defendants' conduct, Stephan was deprived of his liberty, and was ultimately severely injured. The conduct described herein was undertaken by the Phoenix Defendants within the scope of their employment and under color of law such that their employer, Phoenix Police Department – and the City of Phoenix – are vicariously liable for their actions.

///

**JURY TRIAL DEMAND**

180.    Plaintiff hereby demands a jury trial in this matter as to all claims and against all Defendants.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs requests that the Court enter judgment against the Defendants and in favor of the Plaintiff, as follows:

a)  For compensatory, general and special damages against each and every Defendant, jointly and severally, in an amount to be proven at trial;

b)  For all other non-pecuniary damages as to be proven at trial;

c)  For punitive and exemplary damages against Defendants in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

d)  For pre-and post judgment interest to the extent provided by law;

e)  For Plaintiffs' incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 U.S.C. §1988 and as otherwise authorized by any other statute or law; and

f)  For such other relief as this Court may deem proper.

**RESPECTFULLY SUBMITTED** this 1st day of May, 2024.

**MILLS + WOODS LAW, PLLC**

By      */s/ Sean A. Woods*
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2024, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Jessica Kokal
jjk@bowwlaw.com
**BROENING, OBERG, WOODS & WILSON, PC**
rla@bowwlaw.com
2800 N Central Ave., Ste. 1600
Phoenix, AZ 85004
*Attorneys for Defendants*

Karen Stillwell
karen.stillwell@phoenix.gov
Lisa Danczewski
lisa.danczewski@phoenix.gov
**OFFICE OF THE CITY ATTORNEY**
law.civil.minute.entries@phoenix.gov
200 W Washington, Ste. 1300
Phoenix, Arizona 85003
*Attorneys for Defendants City of Phoenix, Chief Michael Sullivan, Sgt. Charles Allen, Sgt. Daniel Snyder, Sgt. Eric Summerville, and Sgt. Brittany Bartimoccia*

/s/ Ben Dangerfield

19