# EXHIBIT 1

Sean A. Woods (Arizona Bar #028930)
Robert T. Mills (Arizona Bar #018853)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.5169
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## IN THE MARICOPA COUNTY SUPERIOR COURT

| | |
|---|---|
| STEPHAN SHERE, | CASE NO: |
| Plaintiff, | ~~FIRST~~ **SECOND** AMENDED COMPLAINT |
| vs. | |
| CITY OF PHOENIX, a governmental entity; MICHAEL SULLIVAN, Chief of the Phoenix Police Department; DANIEL JOSEPH SNYDER, an individual; ALEX BEAVER, an individual; CHRISTOPHER A GITSCH, an individual; ERIC ELLIOT SUMMERVILLE, an individual; BRITTANY BARTIMOCCIA, an individual; JACOB A LEWIS, an individual; CHARLES C ALLEN, an individual; JENNIFER LORRAIN BEBERNISS, an individual; and, JOHN AND JANE DOES I-X, | (JURY TRIAL DEMANDED) |
| Defendants | |

Plaintiff, by and through his attorneys, Mills + Woods Law, PLLC, for his First Amended Complaint ("FAC") against the CITY OF PHOENIX, a governmental entity; MICHAEL SULLIVAN, Chief of the Phoenix Police Department; DANIEL JOSEPH SNYDER, an individual; ALEX BEAVER, an individual; CHRISTOPHER A GITSCH, an individual; ERIC ELLIOT SUMMERVILLE, an individual; BRITTANY BARTIMOCCIA, an individual; JACOB A LEWIS, an individual; CHARLES C ALLEN,

an individual; JENNIFER LORRAIN BEBERNISS, an individual; and, JOHN AND JANE DOES I-X, (collectively "Defendants"), hereby alleges as follows:

## JURISDICTION AND VENUE

1.  Pursuant to 42 U.S.C. §1983 *et seq.*, Plaintiffs bring this action for violations of the United States Constitution, including without limitation the Eighth and Fourteenth Amendments and Arizona common and statutory laws.

2.  The amount in controversy exceeds the minimal jurisdictional limits of this Court.

3.  To the extent applicable, and without conceding that said statute applies, Plaintiffs have served their Notice of Claim upon Defendants in compliance with A.R.S. §12-821.01, *et seq.* More than sixty (60) days have expired since Plaintiffs served their Notice of Claim and Defendants have not responded in any manner to said Notice of Claim.

4.  Pursuant to Article 6, Section 14 of the Arizona Constitution, this court has original subject matter jurisdiction in this FAC because the claims relate to causes of action, the underlying acts and/or omissions for which, at all times relevant, have caused the events alleged herein to occur with primary effect in Maricopa County, Arizona.

5.  Venue is proper in that the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

## PARTIES

6.  At all relevant times in this FAC, Plaintiff Stephan Shere ("Stephan") was an individual residing in Maricopa County, Arizona.

7.  Defendant CITY OF PHOENIX is a governmental entity that acts by and through its officials, employees, and agents, including without limitation the Phoenix Police Department, and each of the other Defendants in this action except for Defendants Humberto Gonzalez-Rios and Jane Doe Gonzalez-Rios.

8.  Defendant MICHAEL SULLIVAN is the Chief of the Phoenix Police Department and is sued in his official and individual capacity. He is tasked with oversight of the Phoenix Police Department and is responsible for all policies and procedures

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

promulgated by the Phoenix Police Department. He is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

9.      Defendant DANIEL JOSEPH SNYDER is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

10.     Defendant ALEX BEAVER is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

11.     Defendant CHRISTOPHER A GITSCH is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

12.     Defendant ERIC ELLIOT SUMMERVILLE is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

13.     Defendant BRITTANY BARTIMOCCIA is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in her official and individual capacity in Maricopa County, Arizona.

14.     Defendant JACOB A LEWIS is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

15.     Defendant CHARLES C ALLEN is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

16.     Defendant JENNIFER LORRAIN BEBERNISS is a Police Officer, employed by and is an agent of the City of Phoenix and the Phoenix Police Department, operating in her official and individual capacity in Maricopa County, Arizona.

17.     Defendants Snyder, Beaver, Gitsch, Summerville, Bartimoccia, Lewis, Allen, and Beberniss for brevity's sake will be collectively referred to as "Phoenix

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Defendants" unless otherwise necessary to list them individually.

18.     The City of Phoenix is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of the Phoenix Police Department (the "City") and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiff as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, Defendants were acting within the course and scope of their employment or contract with Phoenix - or entities privately contracted with Phoenix.

19.     For purposes of Plaintiffs' claims arising under Federal law, including without limitation the United States Constitution and 42 U.S.C. §1983 *et seq*., and as may be relevant to Plaintiff's state law claims, at all relevant times described herein, Defendants were acting under color of state law.

20.     Each of the Defendants failed to do what is minimally required of them by the United States Constitution, and the laws of the State of Arizona, relative to the care, custody and control of Stephan Shere.

21.     By failing in these obligations, Defendants were deliberately indifferent to Stephan's rights guaranteed him by the United States Constitution and the State of Arizona.

22.     As a result of Defendants' deliberate indifference and as a result of intentional acts and omissions to act that fell below the proscribed standard of care – through failures to properly supervise; properly carry out their job duties; and to properly administer medical attention –  Stephan suffered immense pain and suffering and injuries to his person.

## FACTUAL ALLEGATIONS

23.     On October 4, 2022, Stephan Shere had a mental health crisis. was attacked by the police.

24.     He was then detained for two (2) days in jail until October 6, 2022, when the charges were dropped.

25.24.   On October 4, 2022, Stephan's sister thought Stephan was suicidal and called

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

4

911 to report a welfare check.

26.25.  Police were dispatched to Stephan's residence including Officer Badge # 10370 who took photographs.

27.26.  Officers Gitsch and Beaver approached Stephan's door with no weapons drawn to attempt to speak with Stephan.

28.27.  Clearly, they knew that Stephan was not a threat to them.

28.     Stephan told them he did not want to speak with them and shut the door.

29.     Stephan specifically told Gitsch and Beaver that "I'm not thinking about hurting myself."

30.     Upon information and belief, this angered the Phoenix Defendants.

31.     From that point, the Phoenix Defendants became antagonistic and bullyish.

31.32.  From that point forward, the Phoenix Defendants drew their weapons and had them drawn.

32.33.  The Phoenix Defendants had no probable cause to enter or force Stephan from his domicile.

33.34.  The Phoenix Defendants did not have a warrant to seize Stephan or search his domicile.

34.35.  There were no exigent circumstances requiring any type of police intervention.

36.     Despite Stephan telling Gitsch and Beaver that he was not thinking of hurting himself, they stayed and called backup.

37.     For the next eight and a half minutes, the Phoenix Defendants made a commotion, talking loudly, gathering outside his door, knocking on his door again, and setup with their weapons drawn.

35.38.  When Because of the noise, Stephan opened the door and exited to talk peacefully with the officers., Hhe made no threats or threatening gestures towards the officers.

36.39.  In fact, when he saw the officers with guns drawn, he immediately began pleading with them to NOT shoot him.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

5

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

37.40.   He took a step back behind the wall of his entryway because he saw multiple officers with guns drawn.

38.41.   He did not go back into his apartment.

39.42.   Stephan did not want to die and made that clear to the officers.

40.43.   He told the officers he would talk to them willingly, but that he was afraid of being shot.

41.44.   He was not a threat of harm to himself.

42.45.   In sum, there was no iota of evidence or indication that Stephan was dangerous to others or himself – including the Phoenix Defendants.

43.46.   Instead of trying to defuse the situation and ensure Shere was safe, Police officers escalated the contact to the point of physically attacking harming Stephan.

44.47.   The Phoenix Defendants continued to cajole and attempt to get Stephan out of his apartment.

45.48.   Stephan finally relented and exited the apartment – where this time he was greeted with weapons drawn and ballistic shields.

46.49.   Stephan watched as officers walked away from him with their backs turned towards him.

50.     Officers were not concerned that Stephan was a danger to them or they would not have walked away from Stephan with their backs to him.

51.     Stephan spoke with the officers, asking if they were going to shoot him.

52.     At this point, his dog, Max, walked out of his apartment. Stephan said "watch this" alluding to the fact that his dog was friendly – knowing that Max had gotten out and fearing for Max's safety.

53.     Max peacefully and in a friendly manner walked over to the officers. In fact, the officers note that in their reports.

54.     Stephan desperately wanted Max to come back and over the course of minutes called for Max.

55.     The officers refused to let Max go back to Stephan.

56.     While the Phoenix Defendants had Max, they pet him, call him a good boy,

and let him walk freely amongst themselves.

57.     Inexplicably, Stephan was charged with seven (7) counts of aggravated assault because his dog got loose and the Phoenix Defendants reported "Stephan was charged with seven counts of aggravated assault for his attempt to sic his dog on the officers who responded to his suicide threat."

58.     Snyder specifically reported that "this was clearly an attempt to threaten or scare the officers with the idea the dog may attach [sic] them."

59.     He then reports that "The dog, 'Max' trotted through the officers and approached me. He sniffed my leg and then stood next to me in a confused state."

60.     He then reports that "I took the dog by the collar and moved him away from the other officers and found him to be friendly toward me."

61.     Officer Beaver later states to Stephan's sister that "He's got a dog here. Dog's been super friendly, lovable, sweet dog"

62.     However, when Beaver and Gitsch first contacted Stephan, they saw the dog inside the apartment and started talking to the dog – to which Stephan told them to not talk to him.

~~47.~~63. The Phoenix Defendants knew that Max was not a threat from the get-go.

~~48.~~64.  With no provocation, Stephan was beaten and tased by officers – sustaining physical and mental injuries that could be life-long.

~~49.~~65.  Charges against Stephan were dropped by the prosecutor.

66.     Specifically, Stephan was tased and shot by bean bags by Phoenix Defendants for no reason other than to cause him pain and suffering.

67.     The Phoenix Defendants – Sergeant Lewis especially – had already made a plan prior to Stephan being tased and shot with a beanbag to do just that regardless of the situation.

~~50.~~68.  Specifically, Lewis can be heard saying "I have a stun gun ready, a taser ready, and a shield and a rifle. If we have an opportunity … to use those simple options … I'm going to do it."

~~51.~~69.  Stephan has been diagnosed with PTSD and was having a mental breakdown

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

7

when the police came for a wellness check.

70.     Stephan spoke to the Phoenix Defendants for close to eight minutes.

71.     During that time, he removed the shoulder bag he was wearing and dropped it on the floor to show the Phoenix Defendants he did not have anything threatening.

72.     He also lifted his shirt to show the Phoenix Defendants he had nothing in his waistband.

73.     The Phoenix Defendants persisted in their attempts to get Stephan in the open, telling Stephan that if we verify that he is ok, they would get in their cars and leave.

74.     They also persisted in telling Stephan that all they wanted to do was talk to him.

75.     They attempted to use the fact that Stephan said he supports police as a way to get him to come out and show his support of the police.

76.     Incidentally, despite Stephan repeatedly telling the Phoenix Defendants that he supports the police, Summerville wrote in his report that Stephan was "constantly stating how much he hated the police."

77.     Breaking all of their promises to Stephan, when he was in the open with his hands in the air, the Phoenix Defendants tased him and shot him with shotgun propelled bean bags.

52.     Instead, they tased and used bean bags on him almost immediately.

53.78.     Stephan was clearly inebriated and in a mental health crisis and was upset and yelling about his family and his life, but Stephan was not hostile in any way to the Phoenix Defendants other than to tell them to go away while using curse words.

54.79.   While Stephan was on the ground, the Phoenix Defendants mocked him with statements such as "HURTS, DOESN'T IT".

55.80.   According to the Incident Report, both Gitsch and Beaver backed off and waited for additional Officers to arrive before beginning their constant pressure to extract Stephan from his domicile.

56.81.   Certainly, at a minimum, minutes passed until the other Defendants arrived.

57.82.   There was ample opportunity and time for any of the Phoenix Defendants to

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

8

reflect on the situation, its current status, and to stop any further escalation.

58.83.  When the remaining Phoenix Defendants arrived, any of them could have assessed the situation and put a stop to it.

59.84.  None of their actions were necessary, and all of the Phoenix Defendants had a duty to recognize that.

60.85.  Instead, none of them spoke up, and none of them stopped the aggressive, reckless behavior that occurred.

61.86.  Regardless, the Phoenix Defendants charged Stephan with multiple aggravated assault charges against the officers.

62.87.  They split Stephan's head open, brought him to the hospital, and, then jailed him illegally for two (2) days, before he was released.

### Officer Snyder

63.88.  The Phoenix Defendants were dispatched to perform a welfare check on Stephan.

64.89.  Despite this, Officer Snyder approached the situation armed with his ballistic shield.

65.90.  Officer Snyder falsely claimed that Stephan sent his dog out to the officers as an act of aggression.

66.91.  Snyder himself wrote in his police report that Stephan's dog was not aggressive and was easily corralled by another officer.

67.92.  Snyder claimed that Stephan was non-compliant.

68.93.  In his report he writes "AN OPPORTUNITY CAME UP AND OFFICER'S UTILIZED LESS THAN LETHAL OPTIONS TO EFFECT AN ARREST ON STEPHAN."

69.94.  Stephan was docile and compliant.

70.95.  Despite Stephan being compliant, the Phoenix Defendants attacked him.

71.96.  At that point, shotgun beanbags and police tasers were used on Stephan.

72.97.  Stephan fell to the ground.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

98.     Viewing police bodycam footage, Officer Snyder ~~then slammed his ballistic shield~~ inadvertently cracks ~~down on~~ Stephan's head with his ballistic shield.

99.     Officer Snyder should have controlled his shield in a manner that would not potentially cause harm.

100.    A riot/ballistic shield can be dangerous and can cause injury if not utilized correctly.

101.    Officers are trained on the proper usage of ballistic shields.

102.    Snyder knew that his shield could cause injury to Stephan before using the shield.

103.    While using the shield, Snyder failed to control the shield.

104.    The shield caused significant injury to Stephan's head.

105.    This is akin to dropping a firearm on the ground and having it accidentally discharge.

~~73.~~

~~74.~~106. Snyder writes that as he was approaching Stephan, "STEPHAN'S HEAD STARTED TO RAISE BACK UP AND THE BALLISTIC SHIELD STRUCK HIS HEAD."

~~75.~~107. He then writes that "IT APPEARED THAT HIS HEAD STARTED TO BLEED AFTER HE WAS STRUCK."

**Officer Gitsch**

~~76.~~108. Officer Gitsch knew that Stephan presented no threat. He and Officer Beaver were the initial knockers on Stephan's door.

~~77.~~109. They did not have weapons out and did not pull weapons when Stephan was speaking with them.

~~78.~~110. After Stephan told them to go away and shut the door, Officers – including Gitsch became, upon information and belief, angry enough to concoct a plan to get Stephan out of his apartment and taken into custody by any means necessary as discussed herein.

~~79.~~111. Officer Gitsch was part of the team that assaulted or stood by and did nothing

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

10

to stop the assault on Stephan.

80.112. Gitsch acknowledges that Stephan greeted the officers and then closed his door to them.

81.113. The officers – including Gitsch – continued to cajole and eventually forced Stephan to exit his residence.

82.114. Gitsch writes that Stephan was "STUNBAGGED" and "TASED."

83.115. To be clear, Officer Gitsch fired his taser successfully and unnecessarily hitting Stephan and injuring him.

**Officer Beaver**

84.116. Officer Beaver knew that Stephan presented no threat. He and Officer Gitsch were the initial knockers on Stephan's door.

85.117. They did not have weapons out and did not pull weapons when Stephan was speaking with them.

86.118. After Stephan told them to go away and shut the door, Officers – including Beaver became, upon information and belief, angry enough to concoct a plan to get Stephan out of his apartment and taken into custody by any means necessary.

87.119. Beaver and Gitsch turned their backs on Stephan – showing no signs of fear that Stephan was a danger to anyone.

88.120. Despite this, they participated in and failed to intervene in the assault on Stephan.


**Officer Summerville**


89.121. Officer Summerville was part of the team that assaulted or stood by and did nothing to stop the assault on Stephan.

90.122. Stephan greeted the officers and then closed his door to them.

91.123. The officers continued to cajole and eventually forced Stephan to exit his residence.

92.124. Officer Summerville was able to see that Stephan was not a threat to anyone,

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

11

yet still fired his shotgun at Stephan with no provocation.

93.125. To be clear, Officer Summerville fired his shotgun beanbag weapon successfully and unnecessarily hitting and injuring Stephan.

**Officers Bartimoccia, Lewis, Allen, Beberniss**

94.126. Officers Bartimoccia, Lewis, Allen, and Beberniss (the "Onlookers") were part of the team that either assaulted or stood by and did nothing to stop the assault on Stephan.

95.127. During the time that the Phoenix Defendants cajoled and eventually forced Stephan to exit his residence, Stephan was "STUNBAGGED" and "TASED."

96.128. The Onlookers at any point could have intervened and stopped any of the Phoenix Defendants from their excessive and unnecessary actions.

97.129. They did not intervene.

98.130. The Onlookers are just as responsible for the wrongful and unconstitutional conduct as those who participated in the attacks detailed herein. "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham*, 229 F.3d at 1289 (quotations omitted) (quoting *United States v. Koon*, 34 F.3d 1416, 1447, n.25 (9th Cir. 1994)). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id.* (citation omitted).

**Additional Facts and Background**

99.131. The Phoenix Defendants charged Stephan with seven (7) counts of aggravated assault under the pretense that Stephan sent his dog, Max, out to attack the Phoenix Defendants.

100.132.       This did not happen.

101.133.       Max is an emotional support animal and is as docile of a canine as there can be.

102.134.       Max was at the door because of the instigation of the officers.

103.135.       -Max was there to support Stephan – as he always is.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

104.136.       In each and every report from the Phoenix Defendants, they all acknowledge that Max was friendly and docile.

105.137.       The mere presence of an animal is not a threat.

106.138.       Furthermore, each of the Phoenix Defendants acknowledge that Stephan was not receptive to having an interaction with the Phoenix Defendants – which is his right.

107.139.       Stephan told the officers that he wanted nothing to do with them, and he shut his door on them.

108.140.       The Incident Report even states "HE TOLD US NUMEROUS TIMES TO GO AWAY AND WOULD ONLY TELL US 'IT DOESN'T MATTER' WHEN ASKED IF HE WAS GOING TO HURT HIMSELF. HE WOULD ONLY OPEN THE DOOR A SMALL AMOUNT AND KEPT ONE HAND HIDDEN BEHIND THE DOOR. THERE WAS A BRINDLE COLOR PITBULL DOG BEHIND STEPHAN AS HE STOOD IN THE DOORWAY."

109.141.       Stephan was actively preventing his dog from exiting the door.

110.142.       Stephan even told the Phoenix Defendants to put down the Ballistic Shields and he would put down anything on his person so they could chat.

111.143.       When Stephan looked around the corner into the hallway and saw multiple officers with their service weapons drawn on him, he was understandably fearful that he could be injured or die.

112.144.       The Phoenix Defendants continued to announce and knock and demand Stephan exit his residence.

145.    Stephan reluctantly opened the door a fateful final time and the Phoenix Defendants were successful in removing him from his residence and brutally beating him to the point he needed emergency care.

113.146.       Once taken to a holding cell, Defendants isolated Stephan under the auspices of "suicide watch" even though he told the Defendants he had no intention to harm himself.

Once taken to a holding cell, Defendants isolated Stephan under the auspices of

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

13

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

"suicide watch" even though he told the Defendants he had no intention to harm himself.

147.    Stephan was dehumanized, stripped naked, forced to wear a smock, and was forced to use the floor of his cell if he needed to use the restroom.

148.    Phoenix Police Department Operations Orders provide guidance on how officers such as the Phoenix Defendants should approach a mental or physical disability situation.

149.    Operations Order 4.15(2) states that:

A. A person who is not acting or reacting normally to a situation may have a mental illness.

Examples may include, but are not limited to:

• Reporting or acting as if they see, hear, feel, taste, or smell things that are not real

• Believing things that are impossible or are not based in reality

• Feelings of intense depression, euphoria, paranoia, or anxiety

• Thoughts of suicide

• Disorganized thoughts and speech

150.    Stephan clearly met the definition of a person suffering from a mental illness as he was depressed, had previously expressed potential thoughts of suicide, and had disorganized thoughts and speech.

151.    When Stephan reported he was not a danger to himself, the operations orders define what *should* be done.

152.    Section 4.15(3)(C)(3) states that if a person is not a danger to themselves, but transport is not appropriate, officers are encouraged to contact the Maricopa County Crisis Line and speak to a supervisor.

153.    This did not happen.

154.    Instead, just as the United States Department of Justice held, "The City and PhxPD Discriminate in Ther Response to People with Behavioral Health Disabilities."

155.    The USDOJ issued their findings after a years-long investigation into the Phoenix Police Department on June 13, 2024 in a 126 page report.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

156.    The USDOJ report concluded that the City and Phoenix Police regularly uses excessive force in violation of the Fourth Amendment.

157.    The report also found that Phoenix Police's training and weak oversight contribute to the pattern of excessive force, specifically finding that "PhxPD training has mischaracterized the law and encouraged immediate and indiscriminate force, which predictably results in excessive force. Many of the problematic practices we saw originated with PhxPD training. Despite systems for oversight and review, PhxPD's chain of command approved nearly all use-of-force incidents, including those described above."

158.    The City could have dispatched alternative response teams instead of patrol officers.

159.    The City failed to do so.

160.    The City failed to properly train and supervise their officers – including the Phoenix Defendants – in the use of excessive force and their response to mental health crises.

161.    The report found that:

PhxPD also has trained officers to use serious force to respond to hypothetical, not actual, danger. For example, in a training for all supervisors at a station, PhxPD showed a video of an incident in which an officer shot a man carrying a knife with a 40mm round. Although the man was on a deserted street in downtown Phoenix at 2:45 a.m., trainers said the force was reasonable because there "was an element of jeopardy." The jail was across the street and people "could be" released at any time. Trainers have also taught officers to fire Tasers and 40mm projectiles against a person in a behavioral health crisis if the person does not comply with commands, whether or not the person presents a threat. The mindset that a theoretically possible future threat, however unlikely, justifies immediate force violates the Fourth Amendment.

162.    The USDOJ report continues:

Phoenix has trained its officers that all force—even deadly force—is de-escalation. This attitude runs contrary to the basic principles of de-escalation, which offers strategies, such as time, distance, cover, and verbal persuasion, to help a person voluntarily comply with officers without the need to use force or to lessen the force needed.34 PhxPD officers have been trained to "use escalation to de-escalate the situation" as quickly as possible. One trainer suggested immediate force stops a situation "before you really have to hurt someone," and explained that "de-escalation, like talking nice, will get

someone killed." In practice, this translates to quickly using unreasonable force, often without considering whether any force is necessary at all.

Indeed, in some trainings we observed, trainers encouraged officers to use force without warning or just seconds after arriving at a scene, regardless of whether the person presented an apparent risk to officers or others.

163.    The USDOJ report details more training that is unconstitutional:

Similarly, PhxPD has taught officers that it is appropriate to fire projectiles at people who are not following commands but pose no threat. Indeed, 40mm operators have been trained they can fire when faced with "passive resistance," such as when a person is defiant in response to commands, but not aggressive. For example, in a role-playing training we observed, officers stopped a driver on suspicion of assault. The actor got out of his car with his hands up but did not follow the trainee's directions and was moving around and yelling. Eventually, the trainee shot the actor with a 40mm round. During the debrief, instructors told the trainee that he should have taken more decisive action and fired the moment the actor did not comply with a command.

164.    The Phoenix Police Department and the City authorized customs, policies, patterns and practices that are unconstitutional.

165.    These customs, policies, patterns and practices were utilized in the Phoenix Defendants' response to Stephan Shere.

166.    In fact, the Stephan Shere incident is eerily similar to those quoted above from the USDOJ report.

114.

## COUNT I

## EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

(*Phoenix Defendants*)

115.167.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

116.168.    42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from the use of excessive force by

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

16

law enforcement officers. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Stephan Shere's rights to freedom from unreasonable seizures.

117.169.   The Phoenix Defendants acted willfully, knowingly, and with specific intent to deprive Stephan of his rights under the Fourth Amendment of the United States Constitution, including his right to be secure in his person and free from the use of unreasonable force and seizure.

170.   The Phoenix Defendants acted unreasonably by using unnecessary potetntiallypotentially deadly force as described herein.

171.   Each of the Phoenix Defendants knew that other alternatives were available to them – especially in a mental health crisis.

172.   Each of the Phoenix Defendants purposefully eschewed the usage of any alternatives.

173.   Instead, they recognized that Stephan had already told them he was not a risk of harming himself and asked them to go away.

174.   They purposefully ignored those facts.

118.175.   They actually planned – despite knowing that use of force in Stephan's circumstance was unnecessary – to use force as soon as the option presented itself.

119.176.   Stephan was not resisting arrest.

120.177.   Stephan was unarmed.

121.178.   Stephan did not want any interaction with the Phoenix Defendants.

122.179.   Stephan was forced out of his apartment by the Phoenix Defendants.

123.180.   Despite the clear evidence that Stephan was unarmed, not resisting arrest, and was trying to be helpful, Defendants Synder, Gitsch, and Summerville used objectively unreasonable force by shooting Stephan with beanbags, hitting him with a ballistic shields, and tasing him.

124.181.   The remaining Phoenix Defendants, failed to intercede or intervene to prevent their fellow officers from using unwarranted, reckless force with wanton disregard

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

17

to the preservation of life.

~~125.~~182.	Stephan's injuries were the direct result of the Phoenix Defendants' actions and inactions.

~~126.~~183.	Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to Stephan and a high probability that substantial harm would result.

~~127.~~184.	In causing the painful, barbaric injuries to Stephan, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

## COUNT II
## EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 – *Monell* – CUSTOM AND PRACTICE
### *(City; Sullivan)*

~~128.~~185.	Plaintiff incorporates by reference all previous allegations as fully set forth herein.

~~129.~~186.	As previously explained, U.S.C. § 1983 provides individuals with a cause of action to sue for violations of their constitutional rights.

~~130.~~187.	Defendant City and Defendant Sullivan's acts or failure to act deprived Stephan of his constitutional rights.

~~131.~~188.	As described herein, the City and the Phoenix Police Department through Defendant Sullivan and his predecessors has for years created a legacy of using excessive and unlawful force against the citizens of Phoenix, Arizon.

~~132.~~189.	The City, the Phoenix Police Department, and Defendant Sullivan as well as his predecessors has for years acted pursuant to their customs and practices in the use of excessive force, which is an expressly adopted official policy or custom within the Phoenix Police Department.

~~133.~~190.	Operation Orders advise officers on the use of de-escalation

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

techniques in situations where objectively no lethal force is warranted.

134.191.    The City and Sullivan were aware of the Phoenix Police Department's history of Chiefs claiming that new de-escalation policies or use of force policies had been established.

135.192.    The statistics show otherwise.

136.193.    Instead, the customs and practices of the City, the Phoenix Police Department, and Sullivan show that the de-escalation and use of non-lethal force is not enforced through written policy but established and ratified by custom and practice.

137.194.    Despite the Phoenix Police Department's and the City's ministrations, de-escalation techniques are upon information and belief rarely used and the wrongful use of excessive force has become the norm.

138.195.    If de-escalation was truly a priority, Stephan would not have sustained injuries.

139.196.    The policies and procedures in place have failed and established a police force that has consistently acted with blatant disregard to Stephan's constitutional rights and extreme indifference to the value of his life.

140.197.    It is unquestionable that there is a systemic failure by the City, the Phoenix Police Department, and Sullivan that have allowed, supported, and established the commonplace use of excessive force violative of the rights of the citizens of Phoenix, Arizona.

141.198.    Therefore, the established customs and practices led directly to the injuries sustained by Stephan.

142.199.    The City and Sullivan are liable for Stephan's injuries due to its established customs, patterns, and practices.

## COUNT III
## DUTY AND FAILURE TO INTERVENE
*(City and Sullivan)*

143.200.    Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

144.201.     "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham*, 229 F.3d at 1289 (quotations omitted) (quoting *United States v. Koon*, 34 F.3d 1416, 1447, n.25 (9th Cir. 1994)). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id*. (citation omitted).

145.202.     Law enforcement officers who have a realistic opportunity to prevent a fellow officer from violating a citizen's Constitutional rights have a duty to intervene to protect the victim from the unconstitutional retaliation, use of force or violation of due process of law.

146.203.     As set forth herein, at no time did any of the Phoenix Defendants make any affirmative step to intervene to prevent the willful and wanton conduct of Snyder, Gitsch, and Summerville nor did they take any steps to intervene to protect Plaintiffs' Constitutional rights.

147.204.     The City is responsible for the acts and omissions of its employees under *respondeat superior.*

148.205.     The acts and/or omissions of Phoenix Defendants were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Plaintiffs. Plaintiffs, therefore, prays for an award of punitive and exemplary damages against these individual defendants in an amount to be determined according to proof.

149.206.     Plaintiff suffered damages as a direct and proximate result of the illegal acts of the Phoenix Defendants.

## COUNT IV
## GROSS NEGLIGENCE
*(City and Sullivan)*

150.207.     Plaintiffs incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

151.208.     The basic elements of actionable negligence are a duty owed to the plaintiff, a breach thereof and an injury proximately caused by the breach. *Ballesteros v.*

*State*, 161 Ariz. 625, 627, 780 P.2d 458, 460 (App. 1989).

~~152.~~209.      "A duty is a matter of 'the relation between individuals which imposes upon one a legal obligation for the benefit of another.'" *Id.* (internal citations omitted). A duty is breached when the defendant fails to conform to the standard of care reasonable under the circumstances. *Ballesteros*, 161 Ariz. at 627.

~~153.~~210.      At all relevant times, Snyder, Gitsch, and Summerville had a duty to exercise ordinary care for the safety of Stephan Shere.

~~154.~~211.      This includes taking certain actions and refraining from other actions such that the safety from harm to Stephan was preserved.

~~155.~~212.      They breached that duty systematically and repeatedly, including their acts and omissions set forth above, resulting in the injuries to Stephan.

213.      Despite knowing their duties, they failed to control their actions such that a dangerous ballistic shield could cause harm to Stephan's head.

~~156.      Snyder's, Gitsch's, and Summerville's actions were willful and wanton and directly caused the injuries to Stephan.~~

~~157.~~214.      Their conduct was willful and in flagrant disregard to the known risks to Stephan by their actions.

~~158.~~      Defendant Snyder breached the standard of care by failing to control his ballistic shield. ~~using excessive force objectively unreasonable under the totality of the circumstances.~~

~~159.      Defendant Gitsch breached the standard of care by using excessive force objectively unreasonable under the totality of the circumstances.~~

~~160.~~215.      ~~Defendant Summerville breached the standard of care by using excessive force objectively unreasonable under the totality of the circumstances.~~

~~161.~~216.      The remaining Phoenix Defendants~~Onlookers~~ breached the same standard of care by willfully failing to intercede or intervene to prevent their fellow officers from ~~using unwarranted, reckless force~~improperly utilizing their equipment with wanton disregard to the preservation of life.

~~162.~~217.      Defendant City of Phoenix is vicariously liable under *respondeat*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

*superior* for the actions of any employee, agent, or servant of the City of Phoenix, including that of the other named Defendants in this case.

163.218.    The Phoenix Defendants, while acting as agents and employees for the Phoenix Police Department, owed a duty to Stephan to perform their responsibilities as officers of the law without the use of excessive force.

164.219.    The Phoenix Defendants, while acting as agents and employees for Phoenix Police Department, owed a duty to Stephan to act objectively reasonably under the circumstances.

165.220.    As a direct and proximate result of Defendants' breach, Stephan Shere sustained severe and permanent injuries, suffered extreme pain and suffering, continues to suffer from severe PTSD, and has extreme difficulty in maintaining or creating meaningful relationships.

166.221.    Defendants' acts and omissions set forth above, also demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of bodily harm to Stephan and a high probability that substantial harm would result.

### COUNT V

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*(Phoenix Defendants, City [vicarious liability])*

167.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

168.    To sue for intentional infliction of emotional distress, a claimant must show: (1) defendant's conduct was extreme and outrageous; (2) defendant either intended or recklessly disregarded the certainty that the claimant would suffer emotional distress; and (3) the claimant suffered emotional distress. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 553, 905 P.2d 559, 562 (Ct. App. 1995).

169.    The Defendants engaged in extreme and outrageous conduct by beating, shooting beanbags, and firing tasers against Stephan without proper justification.

170.    All the Phoenix Defendants had a duty to intervene.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

171.    None of the Phoenix Defendants reported anything other than Stephan not wanting a confrontation.

172.    Through their conduct, the Defendants either intended or completely disregarded Stephan's dignity and constitutional rights and knew their conduct would lead Stephan to suffer emotional distress.

173.    Thus, the Defendants are liable for intentional infliction of emotional distress.

## COUNT VI

## BATTERY

*(Phoenix Defendants except for Bartimoccia, Lewis, Allen, and Beberniss)*

174.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

175.    The Phoenix Defendants intentionally beat, shot, and tazed Stephane causing harmful or offensive contact with Stephan.

176.    As a direct and proximate result of the Phoenix Defendants' harmful or offensive contact, Stephan suffered severe injuries.

177.    These Defendants' acts constitute a battery upon Stephan in the above-described bodily contact was intentional, unauthorized, or grossly offensive in nature.

178.    The acts and omissions of these Defendants were intentional, negligent, reckless, and unwarranted, and without any just cause or provocation.

179.    As a direct and proximate result of these Defendants' conduct, Stephan was deprived of his liberty, and was ultimately severely injured. The conduct described herein was undertaken by the Phoenix Defendants within the scope of their employment and under color of law such that their employer, Phoenix Police Department   and the City of Phoenix   are vicariously liable for their actions.

## COUNT V

## NEGLIGENT HIRING, SUPERVISION, RETENTION, AND/OR TRAINING

(Sullivan, City [*Vicarious liability*])

222.    Plaintiff incorporates the allegations in the foregoing paragraphs as though

fully set forth herein.

223.   Under Arizona law, an employer may be held directly liable for negligent hiring, retaining and supervision of their employees if: i) The employer knew or should have known the risk of hiring, supervising, and training a particular employee and, ii) The employer's negligence proximately caused the plaintiff's injury.

224.   Upon information and belief, the Phoenix Police Department through the City is ranked as the top policing agency in the nation for use of deadly and excessive force by officers.

225.   The United States Department of Justice (USDOJ) investigated the Phoenix Police Department for systemic violations through their failure to properly train, investigate, or discipline officers.

226.   The USDOJ report found that the City and the Phoenix Police Department:

PhxPD training has mischaracterized the law and encouraged immediate and indiscriminate force, which predictably results in excessive force. Many of the problematic practices we saw originated with PhxPD training. Despite systems for oversight and review, PhxPD's chain of command approved nearly all use-of-force incidents, including those described above.

227.   The USDOJ report also found that PhxPD training encourages officers to use unjustified force.

228.   This training and supervision is not only negligent to an objective observer, but reckless in that it has resulted in significant harm to the public – including Stephan Shere.

229.   The City through the Phoenix Police Department was negligent in their hiring, supervision, retention, and/or training of the Phoenix Defendants.

230.   Defendant City and Defendant Sullivan have a duty to adequately train their police officers to protect members of the public.

231.   The Phoenix Defendants and Defendant Sullivan were acting under the color of state law.

232.   The Operation Orders of the Phoenix Police Department were not adequate to handle the usual and recurring situations that Phoenix Police officers face.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

24

233. The training programs promulgated by Sullivan, his predecessors, and the Phoenix Police Department were unconstitutional and resulted in the negligent training of officers including the Phoenix Defendants of which Sullivan and the City are vicariously liable.

234. As a result of the USDOJ investigation, the Phoenix Police Department was found to negligently and unconstitutionally train their officers in the use of de-escalation techniques and the employment of unwarranted excessive force.

235. Defendant City and Defendant Sullivan, undeniably failed to employ these suggestions from the USDOJ and maintains inadequate training – as found in the final USDOJ report findings.

236. Sullivan has publicly stated that over four hundred (400) officers had not even received proper training on the use of less than lethal force.

237. The acts, omissions, and conduct of the Defendants as described herein were the direct and proximate cause of the injuries of Stephan and violated Stephan's constitutional, statutory and common law rights as guaranteed by the law and Constitution of the State of Arizona.

Phoenix Defendants

## JURY TRIAL DEMAND

180.238. Plaintiff hereby demands a jury trial in this matter as to all claims and against all Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests that the Court enter judgment against the Defendants and in favor of the Plaintiff, as follows:

a) For compensatory, general and special damages against each and every Defendant, jointly and severally, in an amount to be proven at trial;

b) For all other non-pecuniary damages as to be proven at trial;

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

c) For punitive and exemplary damages against Defendants in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

d) For pre-and post judgment interest to the extent provided by law;

e) For Plaintiffs' incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 U.S.C. §1988 and as otherwise authorized by any other statute or law; and

f) For such other relief as this Court may deem proper.

**RESPECTFULLY SUBMITTED** this ~~1st~~ 26th day of ~~May~~June, 2024.

**MILLS + WOODS LAW, PLLC**

By     */s/ Sean A. Woods*
~~Error! Reference source not found.~~
Mills + Woods Law, PLLC
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2024, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Jessica Kokal
jjk@bowwlaw.com
**BROENING, OBERG, WOODS & WILSON, PC**
rla@bowwlaw.com
2800 N Central Ave., Ste. 1600
Phoenix, AZ 85014
*Attorneys for Defendants*

Karen Stillwell
karen.stillwell@phoenix.gov
Lisa Danczewski
lisa.danczewski@phoenix.gov

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

**OFFICE OF THE CITY ATTORNEY**
law.civil.minute.entries@phoenix.gov
200 W Washington, Ste. 1300
Phoenix, Arizona 85003
*Attorneys for Defendants City of Phoenix, Chief Michael Sullivan, Sgt. Charles Allen, Sgt. Daniel Snyder, Sgt. Eric Summerville, and Sgt. Brittany Bartimoccia*

_____ */s/ Ben Dangerfield* _____

**ORIGINAL** filed this 1st day of June 2024
via AZTurboCourt with the Clerk of the
Maricopa County Superior Court
_____

_____ */s/ Ben Dangerfield* _____

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556