LAW OFFICES
BROENING OBERG WOODS & WILSON
PROFESSIONAL CORPORATION
2800 NORTH CENTRAL, 16TH FLOOR
PHOENIX, AZ 85004
(602) 271-7700

Jessica J. Kokal/Bar No. 029042
jjk@bowwlaw.com
rla@bowwlaw.com
Kelley M. Jancaitis/Bar No. 025555
kmj@bowwlaw.com
cjg@bowwlaw.com
*Attorney for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Shere,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>City of Phoenix, a governmental entity, et al.; Michael Sullivan, Chief of the Phoenix Police Department; Daniel Joseph Snyder, an individual; Alex Beaver, an individual; Christopher A Gitsch, an individual; Eric Elliot Summerville, an individual; Brittany Bartimoccia, an individual; Jacob A. Lewis, an individual; Jennifer Lorrain Beberniss, an individual; and, John and Jane Does I-X,<br><br>　　　　　Defendants. | Case No.: 2:23-cv-02657-JJT-ESW<br><br>**MOTION TO DISMISS SECOND AMENDED COMPLAINT [DOC. 24]** |

Defendants move the Court, through counsel and pursuant to Federal Rules of Evidence 12(b)(5) and (b)(6) for dismissal of: (1) Count I (excessive force) asserting claims against Defendants Snyder, Beaver, Gitsch, Summerville, Bartimoccia, Lewis, Allen, and Berberniss (collectively, "the Phoenix Defendants") (whom Plaintiff admits were not properly served with a notice of claim under A.R.S. § 12-821.01(A)); and (2) all of Counts II (*Monell*

liability), III (failure to intervene), and V (negligent hiring) asserted against the City of Phoenix and Michael Sullivan (collectively, "the City") for failing to state a cognizable claim for relief.[1] This Motion is supported by the attached Memorandum of Points and Authorities and the Court's record.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   FACTUAL BACKGROUND

On October 4, 2022, Plaintiff's sister called 9-1-1 to request a welfare check on Plaintiff, who had recently sent her a photograph and video of himself with a pistol in his mouth and the message "hopefully I get shot and die tonight." [Doc. 24, ¶ 24.[2]] The Phoenix Police Department ("PPD") dispatched the Phoenix Defendants. Plaintiff was "clearly inebriated" and refused to engage with the Phoenix Defendants. [Doc. 24, ¶ 78.] Plaintiff, who appeared to be adorned in some type of tactical gear and wearing a knife on a string around his neck, stayed partially hidden behind a door while telling the Phoenix Defendants "it doesn't matter" if he hurt himself. [Doc. 24, ¶ 140.] He offered to "put down anything on his person so they could chat" (suggesting he was in possession of some "thing" they could be concerned about) and then released his pitbull toward them. [Doc. 24, ¶¶ 52, 58, 142.]

---

[1] Through counsel's signature below, Defendants certify in accordance with LR Civ. 12.1(c) that before filing this Motion Defendants notified Plaintiff in writing of the issues to be asserted in the motion. Counsel for the parties met and conferred on the issues but they were not all curable and/or cured in Plaintiff's third attempt to state cognizable claims. The remaining issues are the subject of this Motion.

[2] Plaintiff relies on information contained in public records, including the PPD incident report, as the basis of his complaint. The Court may properly consider the information contained in those records on a 12(b)(6) motion. *Snyder v. HSBC Bank, USA, NA*, 913 F. Supp. 2d 755, 768 (D. Ariz. 2012). *See also Lee v. City of L.A.*, 250 F.3d 668, 689-90 (9th Cir. 2001) (district court had authority to take judicial notice of facts surrounding extradition process where complaint repeatedly refers to the extradition and arguably incorporates the surrounding facts); *Parrino v. FHP, Inc*., 146 F.3d 699, 706 (9th Cir. 1998) (plaintiff cannot avoid dismissal by deliberately omitting crucial information contained in the documents upon which her claims are based), *superseded by statute on other grounds as stated in Abrego Abrego v. Dow Chem. Co*., 443 F.3d 676, 681 (9th Cir. 2006).

Eventually, the encounter became physical. [Doc. 24, ¶¶ 46, 64, 66, 77.] According to Plaintiff, Officer Snyder "failed to control" his ballistic shield and "inadvertently crack[ed] [Plaintiff]'s head" with it. [Doc. 24, ¶¶ 98, 103.] Officer Gitsch fired a taser that struck Plaintiff. [Doc. 24, ¶ 115.] Officer Summerville fired a nonlethal beanbag that struck Plaintiff. [Doc. 24, ¶ 125.] Officers Beaver, Bartimoccia, Lewis, Allen, and Beberniss were merely "onlookers" and did not use any force against Plaintiff. [Doc. 24, ¶¶ 120, 129.] Plaintiff was taken into custody and charged with aggravated assault on several officers, which charges were later dismissed.[3]

On April 2, 2023, Plaintiff mailed a notice of claim ("NOC") to the City pursuant to A.R.S. § 12-821.01(A), demanding compensation for injuries allegedly sustained during the October 2022 events. [1st NOC, April 2, 2023, **Exhibit A**.] Three days later, Plaintiff amended his NOC and sent the amendment via certified and e-mail to the Phoenix Defendants at the PPD office. [2nd NOC, April 5, 2023, **Exhibit B**; Records of Certified Mail and E-Mail Re: 2d NOC, **Exhibit C**.] No other forms of service were attempted. [Email from S. Woods to J. Kokal, March 6, 2024, **Exhibit D** ("As to the delivery of the Notice of Claim, we mailed certified to the individuals and emailed them to each of the individuals.").]

In October 2023, Plaintiff initiated the lawsuit, seeking general, special, and punitives damages for violations of federal and state law. [Doc. 1.] As to the Phoenix Defendants, the operative Second Amended Complaint ("SAC") asserts a claim for excessive force in violation of 42 U.S.C. § 1983 (Count I). As to the City, Plaintiff asserts: Monell liability under § 1983 (Count II) and Arizona state law claims for: "duty and failure to intervene" (Count III), gross negligence (Count IV), and negligent hiring and training (Count V). These claims should be dismissed under Rule 12(b)(5) and (b)(6) as set forth below.

---

[3] Although Plaintiff alleges "the Phoenix Defendants charged [him]" [Doc. 24, ¶ 86], this is inaccurate. Lawyers, not law enforcement offers, make charging decisions.

## II. ALL CLAIMS AGAINST THE PHOENIX DEFENDANTS ARE TIME-BARRED FOR FAILURE TO PROPERLY SERVE THE NOTICE OF CLAIM

Compliance with Arizona's NOC statute, A.R.S. § 12-821.01(A), is a mandatory prerequisite to stating a claim against an Arizona public employee. Strict compliance is required. *Crick v. City of Globe*, 606 F. Supp. 3d 912, 916 (D. Ariz. 2022) ("Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of [the NOC]." (quoting *Falcon ex rel. Sandoval v. Maricopa Cnty.*, 213 Ariz. 525, 144 P.3d 1254, 1256 (App. 2006)).

To comply with A.R.S. § 12-821.01(A), a claim must be filed "as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues." For service of process on an individual, the Arizona rules of civil procedure state:

> [A]n individual may be served by: (1) delivering a copy of the summons and the pleading being served to that individual personally; (2) leaving a copy of each at that individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Ariz. R. Civ. P. 4.1(d).

Plaintiff's claim accrued on October 4, 2023, and the 180-day period expired on April 2, 2023. Plaintiff did not personally serve the NOC on any of the Phoenix Defendants, did not deliver a copy to an authorized agent, and did not leave copies at any of their usual places of abode with a person of suitable age and discretion. Instead, Plaintiff mailed and e-mailed the NOC to the Phoenix Defendants at their workplace.

This is not a filing "as set forth in the Arizona rules of civil procedure" required by A.R.S. § 12-821.01. *See Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, 61, 234 P.3d 623, 629 (App. 2010) (sending NOC directed to defendant police officers via certified mail addressed to municipality did not strictly comply with service on individual required by A.R.S. § 12-

821.01); *Crick*, 606 F. Supp. 3d at 917 (same for personal delivery of NOC to front office personnel at police department); *Hughes v. Kisela*, No. CV-11-00366-TUC-FRZ, 2012 WL 1605904, at *2 (D. Ariz. May 8, 2012) (same for mailing of NOC to defendant police officer "in the care of the University of Arizona Police Department"); *Reeves v. City of Show Low*, No. CV-08-8157-PCT-PGR, 2009 WL 1125414, at *2 (D. Ariz. Apr. 27, 2009) (same). Meanwhile, the time period for such service has expired. Plaintiff cannot show strictly compliance with the requirements of serving a NOC on the Phoenix Defendants, and all Phoenix Defendants must be dismissed from the suit.

### III. PLAINTIFF DOES NOT STATE A CLAIM FOR *MONELL* LIABILITY (COUNT II) WITHOUT SPECIFIC FACTS OF A PATTERN OR PRACTICE

A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiff here attempts to state a Monell claim under a "custom and practice" theory, alleging the City has an official policy or established custom of using excessive force. [Doc. 24, ¶ 189.] A practice is a "custom" only if it is "so persistent and widespread that it constitutes a permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

To sufficiently plead that claim, Plaintiff "may not simply recite the elements of [a *Monell* claim], but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Andrich v. Kostas*, 470 F. Supp. 3d 1048, 1063 (D. Ariz. 2020) (quoting *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)).

Despite ongoing and early discovery and multiple opportunities to amend, the SAC does not contain sufficient factual allegations that support the claim. Plaintiff's unsupported conclusory pronouncements about what the as-yet unidentified "statistics show," what conduct "has become the norm," and the "establishment" of customs and practices are not well-pled and must be disregarded. [*E.g.,* Doc. 24, ¶¶ 192, 194, 196, 197.]

Plaintiff's reference to and reliance on a Department of Justice ("DOJ") report does not save their claims.[4] [Doc. 24, ¶¶ 155-57, 161-163.] The DOJ report is <u>itself</u> just a hearsay conclusion, unsupported by specific or sufficient facts upon which a reasonable jury could find a custom and practice exists (other than by simply accepting the conclusion at face value). Neither Plaintiff nor the DOJ report cite any sources for its conclusions.

The few summaries reproduced from the DOJ report do not specify the dates or situational factors necessary to draw any parallels between those vague examples and the present case. Although Plaintiff "pleads" that "the Stephan Shere incident is eerily similar to those quoted" in the DOJ report, there is no obvious parallel. This is not a case of using lethal force against non-lethal force [Doc. 24, ¶ 161]; used force "just seconds after arriving at a scene" or "the moment the actor did not comply with a command" [Doc. 24, ¶¶ 162-63]. No custom or practice is adequately alleged. *See Ramirez v. Las Vegas Metro. Police Dep't*, 22 Fed. App'x 828, 831 (9th Cir. 2001) (news reports that do not relay analogous facts "have

---

[4] The Court cannot and should not take judicial notice of the contents of the report. Judicial notice cannot be used to prove the truth of the report's contents, *e.g., Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 803 (9th Cir. 1988), and the conclusions therein cannot "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b). The DOJ report noticeably fails to cite any confirmable sources at all. Moreover, many of the DOJ conclusions directly contradict findings made in this Court regarding the viability of the purported constitutional violations. *See, e.g., Harris v. Bertz*, CV-20-00078-PHX-DLR, 2022 WL 3682027 (D. Ariz. 2022) (finding – contrary to the DOJ report at 19 – that there "are no triable issues as to whether Officer Bertz was justified in using deadly force"), *aff'd Harris v. City of Phoenix*, No. 22-16307, 2023 WL 6635077 (9th Cir. 2023) (seemingly cited as an example in the DOJ report at p. 19); *Puente v. City of Phoenix*, No. CV-18-02778-PHX-JJT, 2022 WL 357351 (D. Ariz. 2022) (concluding – contrary to DOJ report at 75 – that the plaintiffs could not prove that gas dispersal during protest activity violated their constitutional rights). For these reasons, and others, other courts have thus rightfully declined to afford a DOJ report any credence in establishing a pattern of unconstitutional acts. *See, e.g., Jordan v. Brumfield*, 687 Fed. App'x 408 (5th Cir. 2017); *Sloatman v. Housewright*, No. 2:21-cv-08235-WLH, 2023 WL 8852375 (C.D. Cal. 2023); *Whitfield v. Riley*, No. CV 09-1877, 2021 WL 2354970 (E.D. La. 2021) (declining to take judicial notice of a single sentence in a DOJ report).

6

virtually no probative value" on the existence of a municipal custom of using excessive force); *Leibel v. City of Buckeye*, 364 F. Supp. 3d 1027, 1039 (D. Ariz. 2019) (plaintiff failed to state a plausible *Monell* claim in absence of any specific facts demonstrating arguably similar constitutional violation).

Even if those few vague examples are taken at face value, the SAC still fails to state a claim for *Monell* liability. The SAC identifies three specific training events during an unspecified period of time – a facially insufficient number to establish a practice "so persistent and widespread" that it equates to "a permanent and well settled city policy." *Trevino*, 99 F.3d at 918. *See Wilson v. Cook Cnty*., 742 F.3d 775, 780 (7th Cir. 2014) ("Although this court has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident – or even three incidents – do not suffice."); *Ochoa v. Ryan*, CV-17-3270-PHX-DGC-CDB, 2019 WL 3816718, *9 (D. Ariz. Aug. 14, 2019) (two concerning incidents insufficient as a matter of law to show persistent wide spread practice of constitutional violations); *Meehan v. Cnty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (same); *D.G. v. Tucson Unified Sch. Dist.*, CV-18-00583-TUC-JGZ-MSA, 2020 WL 7041348, at *5 (D. Ariz. Nov. 30, 2020) (same for three).

*Andrich* is on point. There, the plaintiff identified a statistic that the law enforcement agency "led the nation's municipalities for fatal officer shootings" and alleged agency leadership ignored the problem and failed to require training and documentation that would reduce that number. 470 F. Supp. 3d at 1063. The plaintiff did not state any facts establishing a pattern of similar constitutional violations or any facts regarding where and when the alleged acquiescence in the purported custom occurred. *Id*. at 1064-65. Instead, like here, the SAC only "*asserts* in conclusory fashion that the City maintained certain policies" but "fails to allege any *facts* to support those assertions." *Id*.; *Leibel*, 364 F. Supp. 3d at 1039. *See also Moore v. City of Orange*, 2017 WL 10518114, *3 (C.D. Cal. 2017) (dismissing *Monell* claim that merely listed the various customs, policies, and practices that allegedly resulted in the

constitutional violation).

The same is true here. Nothing in the SAC separates it from the mere "'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*." *Dougherty v. City of Covina*, 654 F.2d 892, 900 (9th Cir. 2011). Accordingly, Plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face" under the principles announced in *Monell*. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## IV. THE CITY CANNOT BE VICARIOUSLY LIABLE FOR FAILURE TO INTERVENE (COUNT III)

As a matter of U.S. Supreme Court precedent, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. 658. This is precisely what Plaintiff pleads in Count III: that the Phoenix Defendants had a duty under the U.S. Constitution to intervene to prevent the violation of Plaintiff's constitutional rights, and "[t]he City is responsible for the acts and omissions of its employees under *respondeat superior*." [Doc. 24, ¶¶ 201-02, 204.] Count III fails to state a viable claim against the City and must be dismissed.

## V. PLAINTIFFS DO NOT STATE FACTS ESTABLISHING THE REQUIRED DEGREE OF DEFICIENCY IN THE TRAINING OF THE PHOENIX DEFENDANTS (COUNT V)

To state a claim for inadequate training, the plaintiff must allege not only that the inadequacy existed, but also that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). This "heightened degree of culpability" can be established only where "the failure to train reflects a 'deliberate' or 'conscious' choice by a municipality." *Id.* at 388, 392.

Plaintiff does allege that the City's training was inadequate. [Doc. 24, ¶¶ 160, 232.] Plaintiff does not allege any facts suggesting the alleged failure was a deliberate or conscious choice, or upon which a reasonable jury could draw that conclusion. Moreover, Plaintiff only

8

alleges (in conclusory fashion) that the training decisions were negligent or, at most, reckless.[5] [Doc. 24, ¶¶ 228-29, 233.] The SAC fails, on its face, to state a cognizable claim for municipal liability premised on negligent hiring, and Count V must likewise be dismissed.

## VI.   DESPITE PLAINTIFF'S BEST EFFORT, MULTIPLE OF PLAINTIFF'S CLAIMS REMAIN UNVIABLE

Plaintiff filed her original complaint in October 2023 and has attempted amendment to avoid dismissal two times over the course of many months. Despite Plaintiff's best efforts, many of the claims remain unviable.

First, the SAC does not state any viable claim against Defendants Snyder, Beaver, Gitsch, Summerville, Bartimoccia, Lewis, Allen, and Berberniss. None of these individuals were served with the notice of claim required by A.R.S. § 12-821.01(A). They, and Count I for alleged constitutional violations by these officers, must be dismissed.

Second, the SAC does not allege the bare minimum facts necessary to support its brazen conclusions that the City adopted a persistent and widespread practice that was the driving force of the alleged constitutional violations; the City can be held liable on a vicarious liability theory; or that the City acted with the heightened culpability necessary to establish a claim for inadequate training. These conclusions are all Plaintiff offers to support Counts II, III, and V.

Applying Rule 12(b)(6) and the well-settled principles it embodies, Plaintiff asserts only one viable claim, for gross negligence against the City. All other defendants and claims

---

[5] Plaintiff's claim that "Sullivan has publicly stated that over four hundred (400) officers had not even received proper training on the use of less than lethal force" is not well pled. [Doc. 24, ¶ 236.] Chief Sullivan's public statement relates to a plan to train 400 officers in *additional* methods of non-lethal force. *See, e.g.,* Birzer, Dani, *Interim Phoenix police chief talks plans for future, Justice Dept. investigation*, Arizona's Family 3TV (Nov. 22, 2022), https://www.azfamily.com/2022/11/22/interim-phoenix-police-chief-talks-plans-future-justice-dept-investigation/ (last visited 26 July 2024). Regardless, this single factual allegation does not demonstrate deliberate indifference, but rather,

9

should be dismissed.

Dated this 5th day of August, 2024.

BROENING OBERG WOODS & WILSON, P.C.

By */s/ Jessica J. Kokal*
Jessica J. Kokal
Kelley M. Jancaitis
*Attorney for Defendants*

CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of August 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Sean A. Woods
Mills & Woods Law
5055 N 12th St., Ste 101
Phoenix, AZ 85014
*Attorneys for Plaintiff*

By: */s/ Raquel L. Auriemma*