Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Stephan Shere, an individual,<br><br>                    Plaintiff,<br><br>vs.<br><br>City of Phoenix, a governmental entity; Michael Sullivan, Chief of the Phoenix Police Department; Daniel Joseph Snyder, an individual; Alex Beaver, an individual; Christopher A Gitsch, an individual; Eric Elliot Summerville, an individual; Brittany Bartimoccia, an individual; Jacob A Lewis, an individual; Charles C Allen, an individual; Jennifer Lorrain Beberniss, an individual; Amanda Newsum, an individual; and, John and Jane Does I-X,<br><br>                    Defendants. | No.: CV-23-02657-PHX-JJT (ESW)<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>(Assigned to the Honorable John J. Tuchi and Referred to the Honorable Eileen S. Willett for all pretrial proceedings) |

Through counsel undersigned, Plaintiffs respond in opposition to Defendants' Motion to Dismiss Second Amended Complaint (the "Motion"). Defendants move to dismiss (1) Count I (excessive force) asserting claims against Defendants Snyder, Beaver, Gitsch, Summerville, Bartimoccia, Lewis, Allen, and Berberniss (collectively, "the Phoenix Defendants") and (2) all of Counts II (*Monell* liability) liability), III (failure to intervene), and V (negligent hiring) asserted against the City of Phoenix and Michael Sullivan (collectively, "the City") for failing to state a cognizable claim for relief. For the foregoing reasons, their Motion to Dismiss should be denied. This Response is supported by the following Memorandum of Points and Authorities below.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   BACKGROUND

Plaintiffs filed their initial Complaint in October 2023. Following service, Defendants removed this case to the District Court of Arizona on December 19, 2023. Defendants moved to extend the deadline to answer (unopposed by Plaintiff) and a new answer date was set for March 8, 2024. On March 7, 2024, Defendants moved to extend the deadline to answer – again unopposed – and the new deadline was set for March 22, 2024. Counsel met to discuss amendments to potentially cure some of Defendants' arguments and a Notice of Intent to Amend was filed on March 21, 2024. Plaintiff's First Amended Complaint ("FAC") was filed on May 1, 2024. On May 13, 2024, Defendants filed an unopposed motion to extend time to file a response to the FAC. The new response date was set for May 29, 2024. A second unopposed motion to continue was filed and granted – setting a new response date of June 12, 2024. A third unopposed motion was filed and granted – setting a new response date of June 26, 2024. Counsel met and conferred on the potential Motion to Dismiss during that time and a Second Amended Complaint ("SAC") was filed on June 26, 2024. Defendants filed their Motion to Dismiss the SAC on August 5, 2024.

Plaintiff's SAC cured many of the arguments suggested by Defendants. Namely, the SAC removed the Phoenix Defendants from Count IV – Negligence and maintained that claim under the theory of *respondeat superior* as to the City and Sullivan to address the fact that the Phoenix Defendants had not been served a copy of the Notice of Claim.

Despite Plaintiffs' efforts, the City Defendants filed their Motion. After review of the Second Amended Complaint, Plaintiffs concede that Count III could be more defined as to which Defendants are part of the claim. Count III is styled only as Duty and Failure to Intervene, which was not styled as a 42 U.S.C. § 1983 claim. The Phoenix Defendants should be listed as Defendants to that claim – and ***not*** the City or Sullivan. Plaintiff believes a simple clerical amendment to that claim will help delineate the Defendants to that claim

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1   – and requests leave to amend that issue. For the remaining issues raised in Defendants'
2   Motion, Plaintiff requests this Court deny Defendants' Motion.

3   **II.   LEGAL STANDARD**

4        The legal standard for Motions to Dismiss pursuant to Rule 12(b)(6) are regularly
5   cited and well known to this Court.  "[T]o survive a motion to dismiss, a party must allege
6   'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its
7   face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting
8   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the
9   plaintiff pleads factual content that allows the court to draw the reasonable inference that
10  the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678).
11  "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and
12  are construed in the light most favorable to the non-moving party." *Id*. at 1144-45 (citation
13  omitted).

14       When resolving a Motion to Dismiss, a Court must accept as true all factual
15  allegations in the complaint and construe those allegations, as well as the reasonable
16  inferences that can be drawn from them, in the light most favorable to the plaintiff. *Hishon
17  v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Further, in the
18  context of a motion to dismiss, the court properly resolves any doubts in the plaintiff's
19  favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

20       The probability of success at trial should not be considered, as "a well-pleaded
21  complaint may proceed even if it appears that a recovery is very remote and unlikely." *Bell
22  Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)
23  (internal citation omitted). Facts plead are assumed to be true, as "Rule 12(b)(6) does not
24  countenance … dismissals based on a judge's disbelief of a complaint's factual
25  allegations." *Id*. "If there are two alternative explanations, one advanced by defendant and
26  the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives
27  a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when
28  defendant's plausible alternative explanation is so convincing that plaintiff's explanation

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

is implausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Consequently, motions to dismiss are disfavored and are to be granted only if there is no cognizable factual or legal basis for the claim.

**III.   CLERICAL AMENDMENT IS APPROPRIATE FOR COUNT III – DUTY AND FAILURE TO INTERVENE**

"[L]eave to amend must be given freely and liberally."  *Ty Kirkpatrick v. Hubman*, No. CV-21-01048-PHX-DJH, at *8 (D. Ariz. Mar. 1, 2023) (emphasis added); *see also*, *e.g.*, *Olivas v. Nevada, ex rel. Dep't of Corr.*, 856 F.3d 1281, 1284 n.2 (9th Cir. 2017) (citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003)); *see also* Fed. R. Civ. P. 15(a)(2).  "[T]he Ninth Circuit has stated that Fed. R. Civ. P. 15(a)'s policy that leave to amend must be 'freely given when justice so requires,' must be applied with '***extreme liberality***' . . . ." *Keller v. United States*, No. CV-11-02345-PHX-PGR, at *5 (D. Ariz. June 28, 2016) (emphasis added) (internal citations omitted) (first quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962); and then quoting *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 709 (9th Cir.2001)).  Leave to amend is especially appropriate when, as is the case here, it is not requested beyond the scheduling order deadline for amending complaints and joining parties.[1]  *See Greenburg v. Wray*, No. CV-22-00122-PHX-DLR, at *1 (D. Ariz. Jan. 9, 2023).

Here, leave to amend a clerical issue is appropriate, as it was missed by Plaintiff when filing his SAC. "Generally, th[e] determination [as to whether to grant a motion for leave to amend] should be performed with all inferences in favor of granting the motion." *Furst v. Mayne*, No. CV-20-01651-PHX-DLR, at *1 (D. Ariz. Mar. 3, 2023) (emphasis added) (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)).  Here, given the Ninth Circuit's policy of extreme liberality in granting motions to amend, this Court should freely permit Plaintiff to file a Proposed Third Amended Complaint in the interest of justice. Plaintiff recognizes that this case has had multiple extensions of time

[1] Here, a Scheduling Order has not even yet been issued.

but believes that because this Amendment request is not for substantive changes, but to resolve a clerical issue, that there would be no unfair prejudice or significant delay.

This clerical resolution will eliminate the appearance of a *respondeat superior* claim under Count III and properly address it as to the Phoenix Defendants.

## IV.   <u>PLAINTIFF HAS ALREADY REMOVED THE PHOENIX DEFENDANTS FROM THE STATE CLAIMS</u>

Defendants argue that "ALL CLAIMS AGAINST THE PHOENIX DEFENDANTS ARE TIME-BARRED FOR FAILURE TO PROPERLY SERVE THE NOTICE OF CLAIM". Plaintiff has already resolved this issue in his SAC – removing the Phoenix Defendants from COUNTS IV and V – and with this Court's leave, will properly address Count III as to the Phoenix Defendants. These are the only Arizona state claims in the SAC. Recognizing that the individual Phoenix Defendants were not personally served a copy of the Notice of Claim ("NOC"), Plaintiff has removed them from those Counts.

Defendants ask that the Phoenix Defendants be dismissed in their entirety but Counts I and III are federal claims under 42 U.S.C. § 1983 not subject to the Arizona statutory requirements for a NOC.  *See Boston v. Kitsap Cnty.*, 852 F.3d 1182, 1185 (9th Cir. 2017) ("It is [ ] well settled that state notice of claim provisions are inapplicable to § 1983 actions."); *Hinton v. Cnty. of Cochise*, CV-23-00482-TUC-JAS (MSA), at *6 n.3 (D. Ariz. June 20, 2024) ("Arizona's notice-of-claim statute does not bar Plaintiffs' federal claims."); *Larsgard v. Mendoza*, No. CV12-8013-PCT-DGC, at *3-4 (D. Ariz. Aug. 27, 2012) ("Arizona's notice of claim statute . . . . applies only to state law claims," and "is inapplicable to Plaintiff's § 1983 claim[s] . . . ."); *Felder v. Casey*, 487 U.S. 131, 147 (1988) (observing that a state cannot "place conditions on the vindication of a federal right").

## V.   <u>PLAINTIFF STATES A CLAIM FOR *MONELL* LIABILITY BY ALLEGING THAT PLAINTIFF'S RIGHTS WERE VIOLATED DUE TO CUSTOMS AND PRACTICES</u>

The SAC references and quotes the DOJ Report, a public record, extensively. This Court can, indeed must, consider the DOJ Report in ruling on Defendants' Rule 12(b)(6)

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

5

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1    Motion to Dismiss.  "A document is part of the complaint where it is "attached to or

2    incorporated by reference in the complaint[.]" *Kocharov v. JPMorgan Chase Bank*, No.

3    CV-21-02220-PHX-DGC, at *10 (D. Ariz. Oct. 31, 2022) (quoting *Henderson v. Emps.*

4    *Mut. Cas. Co.*, No. CV-13-01627-PHX-SRB, 2013 WL 12176848, at *2 (D. Ariz. Nov. 20,

5    2013)). "A document is incorporated by reference where the plaintiff refers extensively to

6    the document in the complaint or the document forms the basis of the plaintiff's claim." *Id.*

7    (citing *Henderson*, No. CV-13-01627-PHX-SRB, at *2).  Here, Plaintiff refers extensively

8    to the DOJ Report in the SAC, and it provides some of the basis of his *Monell* claim. *See*

9    SAC ¶¶ 155-66, 225-35.  Therefore, the DOJ Report is considered to be part of the SAC.

10   For purposes of the Motion to Dismiss, all allegations of the SAC are taken as true, and all

11   reasonable inferences therefrom considered in the light most favorable to Plaintiff.   *See* **§**

12   **II**, *supra*.

13        Defendants readily admit that "information contained in public records, including

14   the PPD incident report," that Plaintiff's SAC relies on "may properly [be] consider[ed] . .

15   . on a 12(b)(6) motion."  Mot. 2:20-22.  The DOJ report, likewise a public record relied

16   upon in the SAC, should also be considered in ruling on Defendants' Motion to Dismiss.

17        In footnote 4 of their Motion, Defendants argue that the Court "should not take

18   judicial notice of the contents of the [DOJ] report."  Mot. at 6:15. This is a red herring.

19   This case is still at the pleading stage. Consideration of the contents of the DOJ Report for

20   purposes of a Rule 12(b)(6) Motion is not the same thing as taking judicial notice.  "[T]he

21   effect of judicial notice is to deprive a party of an opportunity to use rebuttal evidence,

22   cross-examination, and argument to attack contrary evidence . . . ." *Rivera v. Philip Morris,*

23   *Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005) (quoting *Wright v. Brooke Group Ltd.*, 114 F.

24   Supp. 2d 797, 816 (N.D. Iowa 2000)); *see also* Fed. R. Evid. 201(b),(f).  In other words,

25   taking judicial notice is about deeming the contents of a particular document as factually

26   established in a case.  In contrast, in ruling on a Rule 12(b)(6) motion, a court simply

27   determines whether the facts as alleged – even reasonably disputable facts – support the

28   claim.

6

Defendants also claim in footnote 4, citing three (3) cases, that "other courts have thus rightfully declined to afford a DOJ report any credence in establishing a pattern of unconstitutional acts." Mot. 6:23-25. This completely misrepresents those three cases. The issue in each was whether the Court could and should take judicial notice of a DOJ report – which, as noted above, is a much different issue than whether the contents of a DOJ report can be considered when ruling on a motion to dismiss. In addition, none of those cases involve the Phoenix Police Department or the particular DOJ Report at issue here. Finally, none of the cases cited by Defendants in footnote 4 of their Motion stand for the proposition that a plaintiff may not use a DOJ report to support allegations in his pleading that a municipality bears *Monell* liability due to a pattern and/or practice of unconstitutional conduct by its officers.

Defendants argue that "this is not a case of using lethal force against non-lethal force [Doc. 24, ¶ 161]; used force 'just seconds after arriving at a scene' or 'the moment the actor did not comply with a command' [Doc. 24, ¶¶ 162-63]". They argue that the SAC fails to state a claim for *Monell* liability because the SAC identifies "three specific training events during an unspecified period of time" and that it is a "facially insufficient number." The Defendants misstate the pleadings. Plaintiff pleads that the DOJ had investigated the City and its employees in a years-long investigation which culminated in a 126 page report on June 13, 2024. SAC ¶ 155. And as set forth above, that 126 page report, and all factual allegations therein, are considered to be part of the SAC, and thus taken as true.

Plaintiff pleads that the customs and practices of the City, the Phoenix Police Department, and Sullivan show that the failure to use de-escalation and non-lethal force is not enforced through written policy but is established and ratified by custom and practice and that de-escalation techniques are upon information and belief rarely used. SAC ¶¶ 193-194. The City has operations orders that advise on the use of de-escalation techniques, but that are not used in practice. SAC ¶¶ 190-194. Plaintiff alleges that statistics show otherwise – despite the ministrations of the multiple police chiefs in recent history. SAC ¶¶ 191-192. Plaintiff points to statements in the DOJ report that are based on factual

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

findings – such as that Officers are trained to use 40mm rounds and tasers against a person in a behavioral health crisis, whether or not the person presents a threat. SAC ¶ 161. Plaintiff alleges that he did not present a threat of harm to himself or the Officers and that he was compliant with their requests. SAC ¶¶ 29 ["I'm not thinking of hurting myself"], 36, 43 ["He told the officers he would talk to them willingly, but that he was afraid of being shot"], 71 ["he removed his shoulder bag he was wearing and dropped it on the floor to show the Phoenix Defendants he did not have anything threatening"], 72 ["He also lifted his shirt to show the Phoenix Defendants he had nothing in his waistband"], 78, 94-95.

Plaintiff pleads that the officers conferred prior to attacking Plaintiff and that "Lewis can be heard saying 'I have a stun gun ready, a taser ready, and a shield and a rifle. If we have an opportunity … to use those simple options … I'm going to do it'". SAC ¶¶ 67-68. This goes against written policy as alleged in Plaintiff's SAC. SAC ¶¶ 148-153. The operations orders were ignored in this case and the DOJ report cites other instances where officers failed to heed the same operations orders and instead used excessive force against individuals. Lewis made up his mind prior to considering the guidance in operations orders – a decision that no other officer intervened with or tried to dissuade Lewis from making. This alone shows that the City's employees had become not only comfortable with the use of force in mental health crises, but that it was so ordinary that none of the Phoenix Defendants questioned it. These allegations support the claim that the City has adopted customs and practices that violate individuals' constitutional rights by using excessive force in violation of the 4th Amendment.

As stated in page 13 of the DOJ Report (which is considered part of the SAC):

***We have reasonable cause to believe that PhxPD and the City engage in a pattern or practice of conduct that violates the Constitution and federal law. First, PhxPD uses excessive force, including unjustified deadly force and unreasonable less-lethal force***. Second, PhxPD and the City violate the rights of people experiencing homelessness by unlawfully detaining, citing, and arresting them and by unlawfully disposing of their belongings. Third, PhxPD discriminates against Black, Hispanic, and Native American people when making stops and arrests. Fourth, PhxPD violates individuals' First Amendment Rights. ***Fifth, PhxPD and the City discriminate in their***

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1

2

3

*response to people who have behavioral health disabilities.* Finally, we have serious concerns about  PhxPD's treatment of  children, and the lasting impact aggressive police encounters  have on their mental and physical wellbeing.

4

(emphasis added).

5

6

Plaintiff's SAC more than sufficiently states claims against Defendants for Monell liability.

7

8

## VI.   <u>PLAINTIFF STATES FACTS ALLEGING THAT THE CITY'S TRAINING WAS DEFICIENT</u>

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Plaintiff specifically alleges that "The City failed to properly train and supervise their officers – including the Phoenix Defendants – in the use of excessive force and their response to mental health crises." SAC ¶ 160. The SAC alleges that there exist examples of City training that officers are trained to use serious force to respond to hypothetical danger – that Officers are trained to use 40mm rounds and tasers against a person in a behavioral health crisis, whether or not the person presents a threat. SAC ¶ 161. Plaintiff alleges that the DOJ report found "One trainer suggested immediate force stops a situation 'before you really have to hurt someone,' and explained that 'de-escalation, like talking nice, will get someone killed.'" SAC ¶ 162. The DOJ report uses direct quotes made by trainers from training exercises. This is exactly the type of situation showing that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). These training programs reflect a deliberate and conscious choice. Plaintiff alleges that the Chief of Police, Michael Sullivan, has publicly stated that over four hundred (400) officers had not even received proper training on the use of lethal force. SAC ¶ 236. Defendants argue that that fact is not well pled. *See* Motion FN5. They cite to an article found at https://www.azfamily.com/2022/11/22/interim-phoenix-police-chief-talks-plans-future-justice-dept-investigation/.

27

28

Where "a plaintiff's claim depends on the contents of a document and the defendant attaches the document to its motion to dismiss," the court must consider the document as

part of the pleadings for purposes of the motion to dismiss, "even though the plaintiff does not explicitly allege the contents of that document in the complaint." *See Cowen v. Aurora Loan Services*, No. CIV 10-452-TUC-CKJ, at *4 (D. Ariz. Aug. 24, 2010). As set forth in detail below, the article linked to in Defendants' Motion actually provides substantial factual support for Plaintiff's claims. Accordingly, in resolving Defendants' Motion, the Court may view the linked article as part of the pleadings.

In that article, dated November 22, 2022 – *more than a month **after*** the injuries to Plaintiff – the reasons for more training include "An officer shortage and violence against police officers is sparking his desire to make a positive change."

Sullivan is quoted as saying:

> This desire is for more training... I think the years of the pandemic where we didn't get to do in-person scenario training," Chief Sullivan said. "That training was very successful previously and I look forward to bringing in a national group and really enhancing the scenario-based training that we've had in the past." He said he believes that every city is unique and that police reform and fighting can co-exist.

Sullivan admits that the in-person training ceased during the pandemic and only in November 2022 is he addressing that issue. His four-prong plan includes "Expanding the Department's less lethal program--12 officers a week trained on less lethal tools like PepperBall, equip 400 officers with less lethal options before end of 2023, 200 PepperBall devices and 200 40mm impact launchers".

At the time of that article – which is based on a November 21, 2022 press release – Sullivan specifically stated that the "desire is for more training" and that he wants to train 12 officers a week on less-lethal tools, and equip 400 officers with less lethal options before end of 2023. This signifies that at the time of Plaintiff's injuries, the City had not trained officers properly on the usage of non-lethal force. And at the pleading stage, the facts as alleged must be accepted as true. Whether that training happened after Plaintiff's injuries is irrelevant. The fact remains that it had not happened at the time of Plaintiff's injuries.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss Plaintiff's SAC. Plaintiff has already resolved some of the issues presented in Defendants' Motion – namely the state claims and the removal of the Phoenix Defendants as parties to those claims. Defendants make the bizarre argument that because a NOC was not personally served on the Phoenix Defendants, that the Federal claims alleged cannot survive. As discussed herein, that is incorrect and just not the law. Furthermore, Plaintiff has pled factual allegations plausible on their face at the pleading stage to support his *Monell* claim against the City as pled in Count II. Plaintiff has also pled factual allegations plausible on their face at the pleading stage to support his Negligent Training claim as pled in Count V. Finally, as discussed herein, Plaintiff's Count III for Failure to Intervene is actually against the Phoenix Defendants and not the City or Sullivan as Plaintiff recognizes that there is no *respondeat superior* liability in a 42 U.S.C. § 1983 claim – an error that was clerical in nature and can be amended immediately with this Court's leave.

**RESPECTFULLY SUBMITTED** this 17th day of September 2024.

**MILLS + WOODS LAW, PLLC**

By    */s/ Sean A. Woods*
        Robert T. Mills
        Sean A. Woods
        5055 N 12th Street, Suite 101
        Phoenix, AZ 85014
        *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2024, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Jessica Kokal
jjk@bowwlaw.com
**BROENING, OBERG, WOODS & WILSON, PC**
rla@bowwlaw.com
2800 N Central Ave., Ste. 1600
Phoenix, AZ 85004
*Attorneys for Defendants*

Karen Stillwell
karen.stillwell@phoenix.gov
Lisa Danczewski
lisa.danczewski@phoenix.gov
**OFFICE OF THE CITY ATTORNEY**
law.civil.minute.entries@phoenix.gov
200 W Washington, Ste. 1300
Phoenix, Arizona 85003
*Attorneys for Defendants City of Phoenix, Chief Michael Sullivan, Sgt. Charles Allen, Sgt. Daniel Snyder, Sgt. Eric Summerville, and Sgt. Brittany Bartimoccia*


_____*/s/ Ben Dangerfield*_____

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

12