LAW OFFICES
BROENING OBERG WOODS & WILSON
PROFESSIONAL CORPORATION
2800 NORTH CENTRAL, 16TH FLOOR
PHOENIX, AZ 85004
(602) 271-7700

Jessica J. Kokal/Bar No. 029042
jjk@bowwlaw.com
rla@bowwlaw.com
Kelley M. Jancaitis/Bar No. 025555
kmj@bowwlaw.com
cjg@bowwlaw.com
*Attorney for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Shere, <br><br> Plaintiff, <br><br> v. <br><br> City of Phoenix, a governmental entity, et al.; Michael Sullivan, Chief of the Phoenix Police Department; Daniel Joseph Snyder, an individual; Alex Beaver, an individual; Christopher A Gitsch, an individual; Eric Elliot Summerville, an individual; Brittany Bartimoccia, an individual; Jacob A. Lewis, an individual; Jennifer Lorrain Beberniss, an individual; and, John and Jane Does I-X, <br><br> Defendants. | Case No.: 2:23-cv-02657-JJT-ESW <br><br> **REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT [DOC. 24]** |

Plaintiff's Response demonstrates that certain of its claims in the Second Amended Complaint ("SAC") [Doc. 24] are untenable under applicable law and must be dismissed. They include: (1) Count I (excessive force) against Defendants Snyder, Beaver, Bartimoccia, Lewis, Allen, and Berberniss – none of whom are alleged to have acted intentionally to apply force to Plaintiff as necessary to establish liability under § 1983; (2) Count II (municipal

liability liability) against Defendants City of Phoenix and Michael Sullivan (collectively, "COP") – unsupported by facts demonstrating a pattern and practice as the moving force behind the alleged constitutional violation that are required to state a *Monell* claim; (3) Count III (failure to intervene) – futile as to the Phoenix Defendants absent <u>facts</u> demonstrating a plan to violate Plaintiff's constitutional rights, affirmative physical support, or acquiescence; and (4) Count V (negligent training) – unsupported by facts demonstrating a conscious decision to implement deficient training.

The facts pled in the SAC arguably support only two narrow claims: Count I (excessive force) against Defendants Summerville and Gitsch for striking Plaintiff with a beanbag and taser, and Count IV (gross negligence) against Defendants COP. Plaintiff has not made a minimum showing of relief on the remaining claims, and they must be dismissed.

**I.     PLAINTIFF CANNOT SAVE COUNT III THROUGH THE PROPOSED AMENDMENT**

Plaintiff concedes Count III fails to state a claim against COP, but argues the cause of action can be saved via amendment to correct what he deems a "clerical error," and assert "failure to intervene" as a theory to support § 1983 liability against the individual Phoenix Defendants. [Doc. 32 at 2-3.] Amendment would be futile and should be denied, and Count III dismissed in its entirety. *See Election Integrity Project Cal., Inc. v. Weber*, --- F.4th --- (9th Cir. 2024) (amendment properly denied where further amendment would likely prove futile – especially where plaintiff has previously amended a complaint).

Plaintiff argues the failure to identify Count III as a theory of § 1983 liability was "missed by Plaintiff when filing his SAC." [Doc. 32 at 4.] In other words, Plaintiff avows that the claim is otherwise appropriate, only mislabeled. Not so.

The Ninth Circuit recognizes a limited constitutional duty of law enforcement to prevent an ongoing constitutional violation. *Peck v. Montoya*, 51 F.4th 877, 888-89 (9th Cir. 2022). "But in general, one does not 'subject' someone to a deprivation of a constitutional

right – or 'cause someone to be subjected' to such deprivation" (as necessary to trigger liability under 42 U.S.C. § 1983) "simply by watching others violate the Constitution." *Id*. at 889. Thus, the defendant-officer must be "an 'integral participant' in the unlawful act. *Id*. (quoting *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020)).

To state such a claim:

> a plaintiff must allege that the officer had reason to know that his fellow officer was subjecting the victim to objectively unreasonable force. The plaintiff must also allege that the officer had a "realistic opportunity" to intervene and prevent a constitutional violation from taking place. It must further be alleged that the officers "provided some affirmative physical support at the scene of the violation and when they were aware of the plan to commit the violation (or had reason to know of such a plan), they did not object." An individual has no reasonable opportunity to intervene and stop the action of another if that individual does not have prior knowledge that the other person is going to take that action.

*Bueno v. Chang*, No. CV-1603450-PHX-DGC-JZB, 2017 WL 11629023, at *4 (D. Ariz. Oct. 6, 2017) (quotations omitted).

To be sure: the "category of liability is fairly narrow." *Peck*, 51 F.4th at 889. The failure-to-intervene claim does not encompass a vague duty "to stop any further escalation" or otherwise address generalized "aggressive, reckless behavior." [Doc. 24 at 8, ¶¶ 82, 85.] The claim instead arises from <u>facts</u> demonstrating knowledge of and an opportunity to interrupt a specific anticipated or planned constitutional violation.

Plaintiff's facts involve three brief moments of force that were applied in a matter of seconds and then immediately ceased. The first – contact with a ballistic shield held by Officer Snyder – was admittedly "inadvertent," not intentional. [Doc. 24 at 9, ¶¶ 98-99.] This is not intentional conduct that can subject Officer Snyder to § 1983 liable under Count I, *see infra* Part II, or implicate a duty to intervene as to any other Phoenix Defendant under Count III.

All claims premised on this event must be dismissed.

In the other two instances, Officer Gitsch fired a taser and Officer Summerville fired a nonlethal beanbag round at Plaintiff. [Doc. 24 at 10-11, ¶¶ 115, 125.] Plaintiff does not allege any plan existed for Officers Gitsch or Summerville to take these acts,[1] or any facts demonstrating any of the remaining Phoenix Defendants provided affirmative physical support at the scene. Plaintiff does not assert any facts demonstrating that any of the Phoenix Defendants had a realistic opportunity to intervene in the instant between a decision to apply force and a decision to act.

Nor does Plaintiff claim any such facts exist but were omitted in the course of a purported clerical error. The SAC does not and could not state a § 1983 claim premised on a failure to intervene against any defendant. Leave to amend should be denied, and Count III must be dismissed. *See, e.g.*, *Waller v. City of Nogales*, 4:22-CV-00244-RCC, 2023 WL 3863655 (D. Ariz. June 7, 2023) (denying leave to amend to add § 1983 claim premised on failure to intervene because no facts suggested officers merely present on scene could have foreseen and intervened in decision to use unlawful force at the point when it occurred).

## II. THE RESPONSE DEMONSTRATES THE FUTILITY OF COUNT I AS TO OFFICERS SNYDER, BEAVER, BARTIMOCCIA, LEWIS, ALLEN, AND BEBERNISS

Plaintiff's response highlights that his only theory against Officers Snyder, Beaver, Bartimoccia, Lewis, Allen, and Berberniss is that they had a duty but failed to intervene in the allegedly unlawful force applied by Officers Gitsch and Summerville. But § 1983 only imposes liability on a person who "subjects, or causes [a plaintiff] to be subjected" to a constitutional violation. *Peck*, 51 F.4th at 888-89 (quoting 42 U.S.C. § 1983). There are no

---

[1] Plaintiff does allege that Officer Lewis identified the nonlethal options available to the officers, and expressed a preference "to use those simple options" if the opportunity arose. [Doc. 24 at 7, ¶¶ 67-68.] It cannot be inferred from this statement that Officer Lewis planned to commit a constitutional violation. Nor is Officer Lewis alleged to have imposed any force on Plaintiff, through the listed means or otherwise.

facts suggesting these Phoenix Defendants – persons whom Plaintiff himself describes as mere "onlookers" [Doc. 24 at 11, ¶ 126] – <u>subjected</u> Plaintiff, or <u>caused</u> Plaintiff to be subjected, to any constitutional violation, and it thus cannot be disputed that Count I must likewise be dismissed as to the non-shooting Defendants/Onlookers Snyder, Beaver, Bartimoccia, Lewis, Allen, and Berberniss.

### III. <u>UNVERIFIED HEARSAY CONCLUSIONS DO NOT BECOME WELL-PLED FACTS BY VIRTUE OF BEING ATTACHED TO A COMPLAINT</u>

To survive a motion to dismiss on a *Monell* claim, a plaintiff must identify facts that would demonstrate a persistent, *widespread* custom or practice as the driving force of the alleged constitutional violation. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiff cannot and does not dispute the DOJ report he relies on to assert a pattern and practice necessary to state a claim of *Monell* liability is itself comprised of hearsay conclusions. Indeed, Plaintiff relies on the DOJ report to make such assertions as: "The USDOJ report concluded"; "The report found"; "The USDOJ report continues"; "The USDOJ report details." [Doc. 24 at 14, 22, ¶¶ 155, 156, 161-63, 226-27, 234-35.] These are statements about what the DOJ concluded – not <u>facts</u> upon which such conclusions could be drawn.

Plaintiff also does not identify facts anywhere in the SAC or even the DOJ report *itself* that would support the broad conclusions on which Plaintiff relies, or any sources for these as-yet unidentified facts. For example, Plaintiff argues he "pleads that customs and practices of the City . . . show that the failure to use de-escalation and non-lethal force is not enforced through written policy." [Doc. 32 at 7.] The paragraphs that purportedly contain those facts are ¶¶ 193 and 194. [Doc. 32 at 7.] They state:

> 193.  Instead, the customs and practices of the City, the Phoenix Police Department, and Sullivan show that the de-escalation and use of non-lethal force is not enforced through written policy but established and ratified by custom and practice.
>
> 194.  Despite the Phoenix Police Department's and the City's ministrations, de-escalation techniques are upon information and

5

>belief rarely used and the wrongful use of excessive force has become the norm.

[Doc. 24 at 18, ¶¶ 193-94.] These too are conclusions that merely announce the existence of the customs Plaintiff has the burden of <u>proving</u>. Those conclusions are admittedly based "on information and belief" – not fact. Plaintiff tellingly fails to identify or cite any supporting facts or sources for what appears to be only wishful thinking on his part.

Plaintiff similarly argues there is a custom and practice to train officers to use 40mm rounds and tasers against a person in a behavioral health crisis even if not a threat. [Doc. 32 at 7-8.] The only supporting allegation cited is in ¶ 161. [Doc. 32. at 8.] That paragraph is, again, just a self-serving (and near-verbatim) conclusion of the DOJ report that: "Trainers have also taught officers to fire Tasers and 40mm projectiles against a person in a behavioral health crisis if the person does not comply with commands, whether or not the person presents a threat." [Doc. 24 at 14-15, ¶ 161.] There are, again, no supporting facts identified in either the SAC or the report itself.

Plaintiff then attempts to argue a widespread practice of simply "not following operations orders." [Doc. 32 at 7-8.] The supporting paragraphs in the SAC are:

>191.  The City and Sullivan were aware of the Phoenix Police Department's history of Chiefs claiming that new de-escalation policies or use of force policies had been established.
>
>192.  The statistics show otherwise.

[Doc. 24 at 18, ¶¶ 191-92.] "The statistics" are not identified or defined. The only specific instance in which Plaintiff alleges the City did not follow a de-escalation policy: <u>this</u> case.[2]

---

[2] To the extent the Court is inclined to sua sponte dig through the DOJ report for sufficient facts after Plaintiff failed to clearly identify them in his Response, it will likewise come up short. Plaintiff does not dispute that the DOJ report is sparse on details, including dates and situational factors that would be required to draw the necessary parallels, and evidence of repetitive conduct of the nature required to establish a pattern and practice. [Doc. 25 at 6.]

[Doc. 24 at 8.] One unproven instance is facially insufficient to support a claimed pattern.

Throughout the SAC and Response, Plaintiff persists only in shouting out someone else's conclusions in **_bold, italicized_** text. [Doc. 32 at 8-9.] These broad pronouncements do not become any less conclusory by virtue of being publicly available or pasted into a legal document. Indeed, wherever published, they amount to nothing more than mere "inference, conjecture, and speculation" about what might be. *Trevino*, 99 F.3d at 919. Plaintiff cannot rightfully subvert his obligation to identify facts to support his claims in such a fashion.

Meanwhile, Plaintiff does not dispute the analogy to *Andrich v. Kostas*, 470 F. Supp. 3d 1048 (D. Ariz. 2020), or other authority cited in the Motion. [Doc. 25 at 7-8.] The law requires specific and sufficient facts, and Plaintiff cannot survive dismissal via the vague generalisms he advances. The *Monell* claim in Count II should be dismissed.

## IV. AN OCCASIONAL MISSTEP DOES NOT STATE A CLAIM FOR NEGLIGENT TRAINING

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," *Connick v. Thompson*, 563 U.S. 51, 61 (2011), which, as relevant here, requires facts establishing "that the training policy, or lack thereof, amounts to a 'deliberate indifference' to the rights of the people with whom the officials come into contact," as well as a causal connection between the alleged deficiency and asserted harm, *Ramirez v. L.V. Metro. Police Dep't*, 22 Fed. App'x 828, 831 (9th Cir. 2001). Plaintiff nonetheless argues its facts are sufficient to establish a heightened degree of culpability, akin to deliberate indifference, as necessary to sustain a claim for negligent training. That assertion is based on the same unsupported (and unsatisfactory) conclusory allegations identified in Part III, *supra*, that must be ignored – plus the following facts:

- In one training, officers were instructed it would be reasonable to shoot a man carrying a knife with a non-lethal round if there

    was a risk that civilians would emerge from a nearby building.[3] [Doc. 24 at 14-15, ¶ 161.]

- One trainer "suggested" that immediate force is more effective than de-escalation.[4] [Doc. 24 at 15, ¶ 162.]

- COP wants to provide more in-person training. [Response at 9-10 (clarifying Doc. 24 at 23, ¶ 236.]

  The attempt again fails. According to Plaintiff's own authority, the "deliberate indifference" necessary to sustain a claim of negligent training requires evidence of "a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). "To adopt lesser standards of fault . . . would open municipalities to unprecedented liability under § 1983" and result in "*de facto respondeat superior* liability" that was rejected in *Monell*. *Id.* at 391-92.

  The fact that better or more training is available does not state the claim. *Id.* at 391. To be sure: "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city." *Id.* "[P]lainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.*

  None of the sporadic and isolated incidences described in the SAC suggest that the allegedly deficient training "represent [a] 'city policy,'" deliberately chosen over any other more appropriate course of action. *Id.* at 390. The most nefarious inference to be drawn from these sparse facts is that the training program may have "occasionally been negligently administered." *Id.* at 391. As a matter of law, this cannot constitute deliberate indifference, and Count V must be dismissed.

---

[3] Plaintiff does not allege and could never prove that this scenario is similar to that presented by the underlying facts.

[4] Notably, no facts suggest this person actually trained any officer on this point, or, if that did occur, when and how often, as would be necessary to show a conscious choice or deliberate indifference by COP.

## V. THE RESPONSE DOES NOT IDENTIFY THE FACTS NECESSARY TO SUSTAIN THE CHALLENGED CLAIMS

The facts alleged by Plaintiff must be taken as true. But they are too few and far between to state a claim in Count I for excessive force as against Officers Snyder, Beaver, Bartimoccia, Lewis, Allen, or Berberniss; and Counts II, III, and V as to any defendant. These claims should be dismissed consistent with Federal Rule of Civil Procedure 12(b)(6).

Dated this 27th day of September, 2024.

BROENING OBERG WOODS & WILSON, P.C.

By */s/ Kelley M. Jancaitis*
Jessica J. Kokal
Kelley M. Jancaitis
*Attorney for Defendants*

CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of September 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Sean A. Woods
Benjamin Dangerfield
Mills & Woods Law
5055 N 12th St., Ste 101
Phoenix, AZ 85014
*Attorneys for Plaintiff*

By: /s/ *Raquel L. Auriemma*