KAB

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephan Shere,<br><br>    Plaintiff,<br><br>v.<br><br>City of Phoenix, *et al.*,<br><br>    Defendants. | No. CV-23-02657-PHX-JJT (ESW)<br><br>**ORDER** |

Plaintiff Stephan Shere, who is represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983 and Arizona state law. Defendants partially move to dismiss Plaintiff's Second Amended Complaint. (Doc. 25.)

**I.    Second Amended Complaint**

In his Second Amended Complaint, Plaintiff relevantly alleges as follows.

On October 4, 2022, Plaintiff's sister called 9-1-1 to report a welfare check on Plaintiff, who she believed was suicidal. (Doc. 24 at 4.) Plaintiff has post-traumatic stress disorder (PTSD) and was having a "mental breakdown." (*Id.* at 7.) Defendants Phoenix Police Officers Gitsch and Beaver approached Plaintiff's door in an attempt to speak with Plaintiff, but Plaintiff told them he did not want to speak to them, that he was "not thinking about hurting [him]self," and shut the door. (*Id.* at 4-5.) Officers Gitsch and Beaver called for backup. (*Id.* at 5.) Officers then gathered outside Plaintiff's door, continued to knock, and "setup with their weapons drawn." (*Id.*) Plaintiff exited his house and when he saw the officers had their weapons drawn, he pleaded with them not to shoot him. (*Id.*) He stepped

back behind the wall of his entryway. (*Id.*) The officers convinced Plaintiff to leave his apartment, and when Plaintiff stepped out, he saw the officers with their weapons drawn and holding ballistic shields. (*Id.* at 5-6.) Plaintiff asked the officers if they were going to shoot him. (*Id.* at 6.) Plaintiff's dog, Max, then walked out of the apartment and Plaintiff said "watch this." (*Id.*) Max, who was friendly and docile throughout the entire interaction, walked over to the officers, and Plaintiff began to call Max back, but the officers would not let Max go back to Plaintiff. (*Id.*)

Plaintiff was tased and shot by bean bags while he had his hands in the air. (*Id.* at 7-8.) Defendant Officer Snyder's ballistic shield "inadvertently crack[ed]" Plaintiff's head. (*Id.* at 9.) Defendant Officer Gitsch tased Plaintiff. (*Id.* at 10.) Defendant Officer Summerville fired beanbags on Plaintiff without provocation. (*Id.* at 11.) The other Defendant Officers failed to intervene to stop the attack on Plaintiff. (*See generally id.*)

Plaintiff was charged with seven counts of aggravated assault based on Plaintiff attempting to "sic his dog on the officers who responded to his suicide threat" and, as a result, Plaintiff went to jail for two days. (*Id.* at 6, 9.) The charges were dropped by the prosecutor. (*Id.* at 7.)

The City failed to properly train and supervise its officers in the use of excessive force and in responding to a mental health crisis. (*Id.* at 14.)

Based on these allegations, Plaintiff asserts: (1) a Fourth Amendment excessive force claim against Defendants Snyder, Beaver, Gitsch, Summerville, Bartimoccia, Lewis, Allen, and Beberniss (Count I); (2) a *Monell* claim against the City of Phoenix and Defendant Sullivan based on failure to train in de-escalation techniques and the use of non-lethal force (Count II); (3) a Fourth Amendment failure to intervene claim against the City and Defendant Sullivan (Count III); (4) gross negligence against the City and Defendant Sullivan (Count IV); and (5) negligent hiring, supervision, retention and/or training against the City and Defendant Sullivan (Count V).

. . .

. . .

**II.      Motion to Dismiss**

Defendants argue that all claims must be dismissed for failure to comply with Arizona's Notice of Claim statute, Plaintiff does not allege sufficient factual allegations to support a claim for *Monell* liability in Count II, the City cannot be vicariously liable for failure to intervene and therefore Count III should be dismissed, and Plaintiff does not allege sufficient facts to state a claim for negligent training in Count V.

In Response, Plaintiff requests that the Court allow him to amend Count III to clarify that it is a failure-to-intervene claim against Defendants Snyder, Beaver, Gitsch, Summerville, Bartimoccia, Lewis, Allen, and Beberniss. (Doc. 32 at 2.) Plaintiff concedes that he does not state a claim against Defendants City of Phoenix or Sullivan in Count III. (*Id.*)

Plaintiff next asserts that Defendants' attempt to dismiss the federal claims for failure to comply with Arizona's Notice of Claim statute is improper, and therefore the federal claims in Counts I and III should not be dismissed. Plaintiff further asserts that he has included enough facts to support his claim for *Monell* liability. Plaintiff asserts that the Phoenix Police Department has a custom and practice of failing to use de-escalation and non-lethal force and that Officers are trained to use 40 mm rounds and tasers against a person in a behavioral health crisis whether or not that person presents a threat.

In Reply, Defendants assert that Count III cannot be saved by changing the Defendants because Plaintiff does not allege facts demonstrating that the Officer Defendants had knowledge and an opportunity to stop any alleged excessive force used on Plaintiff. Defendants assert that Plaintiff alleges two uses of force: when Officer Gitsch fired his taser and Officer Summerville fired a nonlethal beanbag round at Plaintiff. Defendants assert that there are no facts alleged in the operative Complaint that suggest that the other Defendants had knowledge of or an opportunity to intervene in these uses of force. Defendants further assert that Plaintiff fails to state a claim against Officers Snyder, Beaver, Bartimoccia, Lewis, Allen, and Beberniss in Count I because there are no facts suggesting that those officers used any force against Plaintiff.

**III.     Legal Standard**

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

As a general rule, when deciding a Rule 12(b)(6) motion, the court looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). If a court considers evidence outside the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). A court may, however, consider documents incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *Id.*

. . . .

IV. Discussion

    A.    Counts I and III[1]

Plaintiff concedes that Count III must be dismissed as asserted against Defendants City of Phoenix and Sullivan. Plaintiff asserts that the basis of Counts I and III are that Defendants engaged in excessive force and failed to intervene in the excessive force of other Defendants. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and [he] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The inquiry into a defendant's liability "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *see Rizzo v. Goode*, 423 U.S. 362, 370–71, 375–77 (1976).

As noted, Plaintiff alleges that Defendant Officer Snyder's ballistic shield "inadvertently crack[ed]" Plaintiff's head, Defendant Officer Gitsch tased Plaintiff, and Defendant Officer Summerville fired beanbags on Plaintiff without provocation. (*Id.* at 11.)

Plaintiff alleges excessive force claims against Defendant Gitsch and Summerville in Count I based on the allegedly unwarranted tasing and firing beanbag rounds at Plaintiff. Plaintiff's allegation that Snyder negligently cracked Plaintiff's head with his shield does not support an excessive use of force claim.[2]

---

[1] In their Reply, Defendants appear to correctly abandon their argument that federal claims should be dismissed pursuant to Arizona's Notice of Claim statute.

[2] To the extent Plaintiff's allegations suggest that other force was used, the Court could not ascertain which Defendants allegedly used such force and Plaintiff did not make any allegations suggesting he was unable to identify which Defendants engaged in force. Accordingly, to the extent the allegations suggest that other force was used, Plaintiff has failed to state a claim upon which relief may be granted based on such uses of force.

Plaintiff asserts that each of the officers failed to intervene in the use of force against Plaintiff and points to his allegation that Defendant Lewis told the other officers that he would use a stun gun, taser, and shield and rifle and he would "use those simple options" if an opportunity arose, and the other officers did not intervene to stop Lewis from using that force. But Plaintiff's excessive force claim is not based on any force used by Lewis. Plaintiff does not allege any facts establishing that the other Officer Defendants knew that Gitsch would tase Plaintiff without provocation or had an opportunity to intervene to stop the tasing or knew that Defendant Summerville would fire beanbag rounds at Plaintiff without provocation or had the opportunity to intervene to stop the use of beanbag rounds. Moreover, although the officers may have heard Lewis's statements and not objected to his intention to use force, there is no evidence that the listening officers would have believed Lewis, who announced he was prepared to use force, would use force not necessitated by the situation. Accordingly, Plaintiff fails to state a claim for either excessive force or failure to intervene against Defendants Snyder, Beaver, Bartimoccia, Lewis, Allen, and Beberniss and those Defendants will be dismissed from Count I. Count III will be dismissed in its entirety.

### B. Count II

To state a *Monell* claim based on a policy, practice or custom of Defendants, Plaintiff must allege facts showing (1) that his constitutional rights were violated by an employee or employees of the Defendant; (2) that the Defendant has customs or policies that amount to deliberate indifference; and (3) that the policies or customs were the moving force behind the violation of Plaintiff's constitutional rights in the sense that the Defendant could have prevented the violation with an appropriate policy. *See Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1193-94 (9th Cir. 2002). "Policies of omission regarding the supervision of employees . . . can be policies or customs that create . . . liability . . . , but only if the omission reflects a deliberate or conscious choice to countenance the possibility of a constitutional violation." *Id.* at 1194 (quotations omitted).

. . .

A "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). To support a *Monell* claim for failure to train under § 1983, a plaintiff must allege facts demonstrating that the local government's failure to train amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61 (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Deliberate indifference may be shown if there are facts to support that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need." *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (citing *Canton*, 489 U.S. at 390). While, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train" *Connick*, 563 U.S. at 62, a plaintiff may still prove a failure-to-train claim without showing a pattern of constitutional violations where a violation "may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006) (internal citation omitted). In such instances, "failing to train could be so patently obvious that [an entity] could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 F.3d at 64.

A plaintiff may prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded. *See Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992); *Gomez*, 255 F.3d at 1127.

Here, Plaintiff has alleged sufficient facts to state a *Monell* claim against the City of Phoenix and Sullivan. Plaintiff has alleged that the City did not properly train its officers on using force when dealing with an individual in a mental health crisis, the City knew that

more or different training was needed in such situations, and the City's failure to address these issues ultimately led to the use of excessive force against Plaintiff. Whether an entity has engaged in a custom or practice giving rise to constitutional liability is a necessarily fact-specific question that the Court cannot resolve at this stage of the proceedings. *See Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. June 19, 2017) (a reasonable jury could conclude that at least a dozen instances of defendant Corizon denying or delaying consultations and radiation treatment for cancer patient over a year amounts to a custom or practice of deliberate indifference) (citing *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992)); *Mi Pueblo San Jose, Inc. v. City of Oakland*, C-06-4094 VRW, 2006 WL 2850016, at *4 (N.D. Cal. Oct. 4, 2006) (Whether actions by entity officers or employees amount to a custom "depends on such factors as how longstanding the practice is, the number and percentage of officials engaged in the practice, and the gravity of the conduct.").

Likewise, whether the conduct at issue is so egregious that the need to train is obvious is a fact-specific question that cannot be resolved at this stage of the proceedings. Accordingly, Defendants' Motion to Dismiss will be denied as to Count II.

### C. Count V

Arizona law holds employers accountable for the tortious conduct of their employees "if the employer was negligent or reckless in hiring, supervising, or otherwise training the employee." *Hernandez v. Singh*, No. CV-17-08091-PCT-DWL; 2019 WL 367994, at *6 (D. Ariz. Jan. 30, 2019). For negligent hiring, supervision, and training claims, "Arizona follows the Restatement (Second) of Agency § 213." *Id.* (internal quotation marks and citation omitted). According to Section 213:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> (a) in giving improper or ambiguous orders of [sic] in failing to make proper regulations; or

> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others[;]
>
> (c) in the supervision of the activity; or
>
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (1958).

"For an employer to be held liable for the negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort." *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004). If the threshold tort finding is satisfied, the employer may be liable "not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment." *Quinonez for & on Behalf of Quinonez v. Andersen*, 696 P.2d 1342, 1346 (Ariz. Ct. App. 1984).

To succeed on a negligent supervision claim, "the plaintiff must show the employer knew or should have known the employee was incompetent and that the employer subsequently failed to supervise the employee, ultimately causing the harm at issue." *Hernandez*, 2019 WL 367994 at *7. To prove negligent training, "a plaintiff must show a defendant's training or lack thereof was negligent and that such negligent training was the proximate cause of a plaintiff's injuries." *Guerra v. State*, 323 P.3d 765, 772 (Ariz. Ct. App. 2014), *vacated on other grounds in Guerra v. State*, 348 P.3d 423 (Ariz. 2015). Importantly, "[a] showing of an employee's incompetence is not necessarily enough; the plaintiff must also present evidence showing what training should have been provided, and that its omission proximately caused the plaintiff's injuries." *Id.* at 772–73.

Here, Plaintiff has sufficiently alleged a negligent training claim against the City of Phoenix and Sullivan. As with the *Monell* claim, the Court must take the facts alleged by Plaintiff as true and it is premature to require Plaintiff to *prove* his negligent training claim in the pleadings. Plaintiff has alleged that the City did not properly train its officers on

using force when dealing with an individual in a mental health crisis, the City knew that more or different training was needed in such situations, and the City's failure to address these issues ultimately led to the use of excessive force against Plaintiff. Accordingly, Defendant's Motion to Dismiss Count V will be denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. 25).

(2) Defendants' Motion to Dismiss (Doc. 25) is **granted in part and denied in part** as follows:

    (a) The Motion is **granted** as to Count III and Plaintiff's excessive force claim against Defendants Snyder, Beaver, Bartimoccia, Lewis, Allen, and Beberniss in Count I.

    (b) The Motion is otherwise **denied**.

    (c) Count III and Defendants Snyder, Beaver, Bartimoccia, Lewis, Allen, and Beberniss are **dismissed** from this action **without prejudice**.

    (d) The remaining claims in this action are: (1) a Fourth Amendment excessive force claim against Defendants Gitsch and Summerville, (Count I), (2) a *Monell* claim against the City of Phoenix and Defendant Sullivan based on failure to train in de-escalation techniques and the use of non-lethal force (Count II), (3) gross negligence against the City of Phoenix and Defendant Sullivan (Count IV), and (4) negligent hiring, supervision, retention and/or training against the City of Phoenix and Defendant Sullivan (Count V).

Dated this 26th day of December, 2024.

Honorable John J. Tuchi
United States District Judge